may so recite, to the end that the respondents may have these questions of law reviewed by the Court of Appeals if so advised.

It follows that the order should be reversed, and the motion denied, but without costs, and that the application for an extension of time should be denied, without costs.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur. MILLER, J., dissents.

---

CORBETT v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.  May 1, 1912.)

1. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES — LABOR LAW — "MECHANICAL CONTRIVANCE" — "STRUCTURE" — "HOIST."

Labor Law (Consol. Laws 1909, c. 31) § 18, provides that a person employing or directing another to perform labor in the repairing of a house, building, or "structure" shall not furnish, erect, or cause to be furnished or erected, for such labor, scaffolding, "hoists," stays, or other mechanical contrivances which are unsafe, and which are not such as to give proper protection to a person so employed or engaged. *Held* that, where a car repairer was injured by the breaking of the handle of a ratchet jack with which the body of a freight car had been hoisted to permit repairs on the trucks, as the body was being lowered, the jack, while not a "hoist" within the statute, is nevertheless a "mechanical contrivance" furnished by the railroad company for plaintiff's use, and the car was a "structure" as to which the jack was being used; and hence the defective jack was within the statute.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 7, pp. 6700–6702; vol. 8, p. 7806.]

2. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCE—EVIDENCE OF DEFECT.

Where a car repairer was injured by the breaking of the handle of a ratchet jack used in raising the body of a freight car, and such jack was an appliance which Labor Law (Consol. Laws 1909, c. 31) § 18, prohibited the employer to furnish, evidence that the handle broke while being properly used and operated for the purpose for which it was furnished, if unexplained, was sufficient to require submission to the jury of the question whether the jack was defective, and to sustain a finding that defendant was negligent in furnishing an unsafe contrivance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCE—HANDLE.

Where a car repairer was injured by the breaking of a defective handle, used in the operation of a ratchet jack while letting down the body of a car, the handle was an integral and necessary part of the jack itself, and therefore was within Labor Law (Consol. Laws 1909, c. 31) § 18, prohibiting a master from furnishing a defective hoist or other mechanical contrivance for the employé's use in repairing a structure.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

Appeal from Oswego County Court.

Action by James J. Corbett against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a motion on the minutes of the court for a new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Francis E. Cullen, of Watertown (Purcell, Cullen & Purcell, of Watertown, of counsel), for appellant.

D. P. Morehouse, of Oswego (Morehouse, Mizen & Morehouse, of Oswego, of counsel), for respondent.

ROBSON, J. Plaintiff, a skilled mechanic employed by defendant, had been working for it in the capacity of a car repairer in its yards at Oswego for several years prior to the occurrence which is the cause of action upon which he has recovered the judgment now before us for review.

Just before the accident plaintiff and a fellow workman in the course of their duty made some repairs to the trucks of a freight car. To make these repairs, it was necessary to take the defective trucks out from under the end of the car, which rested upon them, and to which they were attached. This required that the end of the car be raised sufficiently to free its connection with the trucks, which were then taken from under the car, and the repairs made. Two ratchet jacks, one operated on each side of the car, were used in raising it. These jacks may be used either to raise or lower heavy objects, and are equipped with a mechanical device, so that the operator can readily adjust them to operate either in raising, or lowering, the head of the jack, as desired. They have a metal socket, which is connected directly with the mechanism of the jack; and this socket, when fitted with a wooden lever, called a jack handle, forms the arm of the jack by which it is operated. These arms are worked by hand in an up and down movement similar to the operation of a pump handle. The jack handles are between four and five feet long, and are about three inches in diameter, except that each end is tapered for seven or eight inches of its length, so that either end fits the socket of the jack.

Plaintiff and his companion, having repaired the trucks and put them in position under the car, then proceeded to lower the car using the jacks, which were placed as they had been in the operation of raising it. To lower the jack the operator first presses the arm, or handle, down until the jack unlocks, and then lets up on it until the ratchet of the jack again engages; and the movement is repeated until the object has been lowered the distance desired. Each complete operation of the handle lowers the jack about an inch. The car had been lowered some inches, and plaintiff again put his weight upon the lever for another movement of the jack; and apparently had just released the ratchet when the jack handle broke in his hands 12 to 15 inches from the extreme end releasing the jack from the pressure he was then exerting on the handle, and the weight of the

car caused the handle to fly up and strike him on the head and face with such force that he was seriously injured.

[1] The trial court held that the jack was a "hoist," "or other mechanical contrivance," furnished by defendant for plaintiff's use in repairing a "structure"; and, as such, came within the classification of appliances and contrivances which an employer is by the provisions of section 18 of the Labor Law prohibited from furnishing unless they are safe, suitable, and proper and so constructed as to give proper protection to the life or limb of the person so employed in repairing the structure. That the car was a "structure" within the meaning of that term as used in the statute seems to have been in effect decided in Caddy v. Interborough Rapid Transit Co., 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30. At the time he was hurt plaintiff was still engaged in repairing the car; for it is apparent that replacing the trucks was quite as necessary a part of the work before the car was completely repaired for service as any other thing connected with the operation.

It is doubtless true that the word "hoists," as used in the statute, would not in the usual acceptance of the term include a jack. But, even applying the rule of ejusdem generis in construing the statute, it would seem that a jack, used as this was in making repairs to the car, is a mechanical contrivance used in lifting, or lowering, heavy bodies, which is an accepted definition of the word; and might therefore be considered as a contrivance included in the generic description of the appliances which the statute in terms designates.

[2] There was no evidence of any defect in the jack, except that furnished by the fact that the handle broke while properly used and operated for the purpose for which defendant furnished it. If I am right in my conclusion that an unsafe jack is an article which the statute forbids an employer to furnish for the purposes specified in the act, then the fact that it broke under the conditions above referred to, if unexplained, was at least sufficient evidence to require the submission to the jury of the question whether the jack was defective; and a finding that defendant was negligent because it furnished an unsafe contrivance should not be disturbed. Madden v. Hughes, 185 N. Y. 466, 78 N. E. 167; Gombert v. McKay, 201 N. Y. 27, 94 N. E. 186; Haggblad v. Brooklyn Heights Railroad Co., 117 App. Div. 838, 102 N. Y. Supp. 1039; Cummings v. Kenny, 97 App. Div. 114, 89 N. Y. Supp. 579; Smith v. Variety Iron & Steel Works Co., 147 App. Div. 242, 132 N. Y. Supp. 242; Huston v. Dobson, 138 App. Div. 810, 123 N. Y. Supp. 892.

[3] Appellant's counsel urges that, even conceding that the jack handle was defective, it cannot be properly considered as warranting a finding that the jack itself was defective. This claim is based upon the fact that the jack handle was a simple appliance fitted for use in any jack of similar construction; that they were furnished in sufficient quantities so that any employé could serve himself with a satisfactory handle, either by procuring a new one from the shops, or by selecting any one of a number easily accessible in the yards, if for any reason the one he was using was unsatisfactory, and that

plaintiff could determine for himself as easily as could the defendant whether the handle he was using was safe and satisfactory. But I think the handle was as much an integral and necessary part of the jack itself as any part of its structure or mechanism; for its construction required the use of a handle to efficiently operate it. If the handle is a part of the jack, then the statute prohibits defendant from furnishing an unsafe handle equally as it does from supplying a jack defective in any other essential part. It does not appear what, if any, inspection of the handles defendant made or required. Nor does it appear what kind of wood they were made of; and absolutely nothing appears in evidence as to the condition of this particular handle beyond the fact that plaintiff says that it appeared to him to be all right, and that it afterwards broke while he was properly using it. It was incumbent upon defendant at least to show some care and diligence both in the manufacture and reasonable inspection of these handles, to the end that their "safety, efficiency, and quality" might be determined. Pettersen v. Rahtjen's American Composition Co., 127 App. Div. 32, 111 N. Y. Supp. 329.

The judgment and order should be affirmed, with costs. All concurred.