No. 530 West 178th street for a term of one year, and that the term was to begin on October 15, 1913, at a rental of $275 per year payable in monthly installments in advance. The judgment is for the rent from October 15, 1913, to May 1, 1914; the justice holding that there was an indefinite hiring which terminated on May 1st. The defense was: (1) That there was no leasing for a year; and (2) that there was a constructive eviction. It was not disputed upon the trial that the leasing was made upon condition that certain repairs should be done to the rooms in order to render them fit for occupancy. These repairs were to be completed as early as October 18th. The defendant's goods were then in a storage warehouse, and he moved them to the apartment on October 18th. He then found that the repairs had not been completed and his goods were not unpacked. He moved out of the rooms on or about November 15th, without having unpacked his goods. The defendant and his wife both testified that during their occupancy they repeatedly asked that they have heat, that the rooms were insufficiently heated, and the defendant swore that the roof leaked badly. Both testified that the landlord repeatedly promised that the repairs should be completed, which was not done, and that sufficient heat would be furnished, which promise was also unfulfilled. Two apparently disinterested witnesses testified that they visited the defendant's wife at several times, that there was no heat in the rooms, and that they had to sit with heavy coats on in order to be comfortable. One of these witnesses testified that she was there at different times during defendant's occupancy from 11 a. m. until 5 or 6 p. m., and that there was no heat in the rooms. The only testimony given to offset this was by the plaintiff, who merely testified that the heat was turned on October 20th and was kept on continuously until May 1st; whether or not sufficient heat was furnished, plaintiff did not state. Under all the circumstances as disclosed by the evidence, a constructive eviction was clearly made out, and the defendant promptly removed from the premises upon ascertaining that there was no probability of the repeated promises of the landlord being complied with. Judgment should be reversed.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.

---

(165 App. Div. 753)

LOESCH v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. January 29, 1915.)

1. MASTER AND SERVANT (§ 116*) — LIABILITY FOR INJURIES — "STRUCTURE" — "SCAFFOLDING"

A locomotive boiler which employés were repairing was 12 feet high and rested on blocks about 5 feet high. Around the locomotive a staging, consisting of planks laid upon horses 5 feet high, had been erected and was necessary to do the work. The staging on one side of the locomotive consisted of planks laid from a horse to the scaffold on another side with no horse between the outer supports. The horses were shaky, the planks old and warped, and they were not nailed or fastened.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

One plank was so warped that only the middle rested on the horse. An employé who did not assist in erecting the staging while working thereon made a backward step, causing this plank to tilt, letting him fall off. *Held*, that the locomotive was a "structure," and the staging around it was a "scaffolding," within the Labor Law (Consol. Laws, c. 31).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

For other definitions, see Words and Phrases, First and Second Series, Structure; Scaffolding.]

2. MASTER AND SERVANT (§ 286*)—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

Whether the scaffolding was unsafe, unsuitable, or improper was a question for the jury, and the court erred in dismissing the complaint.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006. 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

Appeal from Trial Term, Kings County.

Action by Sofie Loesch, as administratrix of Charles Loesch, deceased, against the Long Island Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and RICH, JJ.

Otto H. Droege, of New York City, for appellant.
William C. Beecher, of New York City, for respondent.

STAPLETON, J. The cause of the death of plaintiff's intestate was a fall to a hardwood floor from a staging upon which he was at work. His administratrix sues to recover damages, alleging that death was caused by the actionable neglect of decedent's master. Her complaint was dismissed. We are of the opinion that she adduced evidence which required the submission of her case to the jury. Kraus v. Birnbaum, 200 N. Y. 130, 93 N. E. 474.

[1, 2] The defendant was overhauling a locomotive in its shop. The locomotive was stripped. The flue was being renewed. Nothing remained except the boiler and shell. Those parts were 8 feet wide at the base and rose to a height of 12 feet. The boiler, at the top, was semicircular. The base rested on blocks about 5 feet high. The front of the dismantled locomotive faced the west, and the rear and fire box faced the east. Around the locomotive, on its north, south, and east sides, the defendant's employés, engaged on the work, erected, 4 weeks before the casualty, a staging consisting of planks laid upon horses 5 feet high. This staging was necessary to do the work. The intestate did not participate in its erection. We need not concern ourselves with the details of the construction, save as they affect that part of the staging erected on the east end of the locomotive and in front of the fire box. In building that section, 5 planks, 10 inches wide and 2 inches thick, were laid across from a horse at the southeast corner of the locomotive to the planks forming the scaffold on the north side. There was no horse between these outer supports. It would have been better construction to place one in the middle, but

for that purpose there was not another horse available. This imperfect description is an adoption of the testimony. There was a model in the trial court, and much of the evidence was given with reference to it. The horses used were shaky. The planks used on the east side were old and warped. They were not nailed or fastened in any way. From the outer plank a piece about 2 inches wide and a foot and a half long was broken. The plank was so warped that only the middle of it rested on the horse. It had a roll, so that it turned up when decedent stepped upon it. Decedent came to this job and went upon this section for the first time on the afternoon he was killed. He was engaged in reaming the boiler. He used an apparatus operated by compressed air. It was about 28 inches long and weighed about 50 pounds. As he stood on the platform, the holes he was reaming were as high as his waist. As he was operating the machine a little before the casualty, the machine shook him. While he was shaking he tried to move his hands, made a little step backward, stepped on the end or outer plank, which tilted, and he fell off backward.

We think that this case cannot be distinguished by any sound distinction from Caddy v. Interborough Rapid Transit Co., 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30. The locomotive that was being repaired is a "structure," and the staging surrounding it is a "scaffolding," within the purview of the Labor Law. Chapter 36 of the Laws of 1909, constituting chapter 31 of the Consolidated Laws. Upon the evidence recited, the case should have been submitted to the jury to determine as to whether the scaffolding was unsafe, unsuitable, or improper. Caddy v. Interborough Rapid Transit Co., supra; Bohnhoff v. Fischer, 210 N. Y. 172, 104 N. E. 130; Corbett v. New York Central & H. R. R. R. Co., 151 App. Div. 159, 135 N. Y. Supp. 137; Nixon v. Thompson-Starrett Co., 131 App. Div. 152, 115 N. Y. Supp. 130.

The judgment must be reversed, and a new trial granted; costs to abide the event. All concur.