Charles Lambíase, J.
This is a motion made upon the amended report of the Commissioners of Appraisal ‘ ‘ herein appointed to ascertain the compensation to be made to the several defendants for the property rights to be taken by the plaintiffs herein for the public uses specified in the petition herein, which said report was filed in the office of the Monroe County Clerk June 30, 1961 * * * for an order confirming said report and for a final order herein and such other and further relief as may be proper. ’ ’
Heretofore by report dated September 30, 1960 the Commissioners of Appraisal fixed the amount of compensation due to the defendants because of the taking herein. On a motion by plaintiffs to confirm the report, this court, Blauvelt, J., by memorandum dated March 31, 1961 concluded 1‘ that the report is insufficient to support the determination of the commissioners on the merits. Accordingly, the motion to confirm is denied and the matter remitted to the same commissioners of appraisal for reconsideration, including a rehearing and the taking of additional evidence, if they be so advised that the same is necessary, and for the making and filing of an amended report not inconsistent with this memorandum.” In its memorandum the court considered and passed upon certain exceptions filed by the defendants, and it made certain specific recommendations as to what was to be considered and determined for incorporation and inclusion in the amended report to be filed.
The defendants have excepted to the amended reports, and we noAv proceed to the orderly consideration of such exceptions.
AS TO EXCEPTION NUMBER “ 1 ”
Defendants except to the following finding:
“ We determine that there is no probability of such change in zoning in the reasonably foreseeable future and that the possibility of such change is remote in the extreme. We have, therefore, not included the speculative effect of such change upon the future value of defendants’ land as a basis of the *534 award, and we have considered only values applicable within a reasonable period before and after the taking.”
The objection is made that said finding is. irregular for errors of law and is contrary to and against the weight of the evidence. It is maintained that the probability of the subject land being used for industrial purposes should be considered because a willing buyer and a willing seller would consider such element in arriving at a value for the land.
The record discloses that evidence was adduced as to the effect on the market value of defendants’ property of a reasonable probability of change in zoning of the same from residential to industrial. The Commissioners in their amended reports state that they considered all of the testimony and arguments in respect to such reasonable probability of change. Reasonable probability that a prohibition or restriction would be modified or removed in the near future (in this instance the modification from residential zoning to industrial zoning) may be considered as a factor in the determination of reasonable value and may be shoAvn to have an actual effect on an existing market. 6 ‘ Such probabilities, as Avell as the probability of industrial and residential growth or changes in a community, may be shown to have an actual effect on an existing market. The fact that they may not actually happen is not to say this possibility does not influence the market.” (Valley Stream Lawns v. State of New York, 9 A D 2d 149, 152.) “ To what extent the possibility or probability of a change Avould affect the value as of the date of taking is dependent upon the degree of probability, the imminence of the change, the effectiveness of the opposition, and other facts Avhich are largely speculative and conjectural.” (United States v. 50.8 Acres of Land, 149 F. Supp. 749, 752, affd. United States v. Meadow Brook Club, 259 F. 2d 41, cert. denied 358 U. S. 921.)
The Commissioners’ reports recite that they did consider the matter of probable change of zoning. They conclude and set forth therein: that the highest and best use of defendants’ land at the time of the taking for the easements herein was for residential purposes as permitted by Residential “ A ” classification under the Toaati of Henrietta Ordinance; that they considered the probability of a change in zoning from residential to industrial; and that in their opinion the probability of such change of zoning in the reasonably foreseeable future was remote in the extreme, did not influence in effect the market value for which reason it was not included as a factor in the determination of market value. In our opinion there is sufficient evidence in the record for the *535 findings made by the commission as to the remoteness or probability of change of zoning as well as to the highest and best use of defendants’ property. We, therefore, disallow the exception.
AS TO EXCEPTION NUMBER “2”
It is urged that:
“ 2. The awards are grossly inadequate and are irregular for errors of law and are contrary to the evidence and against the weight of the evidence, in that the Commissioners of Appraisal have refused to apply the proper rules for determining fair market value, and they have failed to apply the rules of highest and best use of defendants’ property in determining value, and have failed to give any consideration to the evidence produced by defendants that the present zoning of the defendants’ property to residential would probably in the future be changed to industrial and that the highest and best use of defendants’ property is industrial, and that the use of defendants’ property as industrial enhances its value many times.”
This exception is related to and is inextricably connected with exception number “ 1 ” which we have just discussed. In view of such discussion and of our disallowance of exception numbered “1”, it would seem that this exception insofar as it related to exception 1 ‘ 1 ” also must be and hereby is disallowed. We reserve for further discussion the general exception herein that “ The awards are grossly inadequate and are irregular for errors of law and are contrary to the evidence and against the weight of the evidence ” as said objection may be based on other grounds contained in the third and fourth exceptions.
AS TO EXCEPTIONS NUMBERED “ 3 ” and “ 4 ”
In exception number “ 3 ” it is maintained:
“ That the Commissioners of Appraisal failed to consider and apply the testimony of the defendants to the effect that the taking of these easements restricted defendants in the use of their entire property because it took from them the right to drain this property with the existing facilities and the right to plan and develop the land with roads, buildings and utilities in an unrestricted manner. ’ ’
And in exception number “ 4 ”, which is more or less tied in with exception number “ 3 ”, it is urged that:
“ The description of the easements taken by the plaintiffs are indefinite and inadequate and do not state the rights of the respective parties in the use of the easements taken and are, therefore, wholly insufficient to give the Commissioners of *536 Appraisal a proper basis to determine values. They fail to answer the following questions:
“ a. Do the easements in fact divide defendants’ property in two parts, leaving that portion lying to the east without ingress and egress?
“ b. Can defendants’ bridge these easements by structures, roadways, and bridges?
“ c. Can these easements be modified and changed in the future; can the water from the open ditch be enclosed in a pipe, and can the course of the pipe or ditch be changed in the future so as to allow development of defendants’ land? ”
We shall discuss them together.
Before the condemnation the water that flowed over defendants’ land was just surface water. We do not find support in the record for any conclusion that prior to the appropriation and at the time thereof the pre-existing ditch on defendants’ land carried waters other than surface waters, or that said ditch and the waters carried therein constituted a natural water course.
The easements taken for storm water drainage purposes provide for construction of both subsurface drainage pipes and of an open drainage ditch. The flow of waters on, over and across defendants’ land is increased by reason of the use of such instrumentalities since through and by them there is carried and collected increased amounts of surface waters and then cast upon defendants ’ lands.
“ New York has never adopted, as to surface water, the rule of the civil law, but rather has quite uniformly held that the lower owner may, in good faith, and for the purpose of building and improving his land, fill or grade it, although, thereby, surface water is cast back on the lands above. (Barkley v. Wilcox, 86 N. Y. 140; Bennett v. Cupina, 253 N. Y. 436.) ” (Town of Hamburg v. Gervasi, 269 App. Div. 393, 394.) In Kossoff v. Rathgeb-Walsh (3 N Y 2d 583, 589-590) the court says: “ Under the civil law the upper holds the dominant estate and the servient estate is in the lower proprietor. Under the common law neither holds a dominant or servient estate with respect to the other Both have equal rights to improve their properties, come what may to the surface water, provided, of course, that the improvements are made in good faith to fit the property to some rational use to which it is adapted, and that the water is not drained into the other property by means of pipes or ditches.” And it has been said that: If, however, a city collects surface waters into a single channel and casts them in large and substantially *537 increased volume on an adjacent owner so that a stream will he filled beyond its natural capacity and thereby causes the drainage to flow on adjacent lands, the owner has a cause of action. A municipality has no immunity from legal responsibility for creating and maintaining a nuisance. (Noonan v. City of Albany, 79 N. Y. 470; Fox v. City of New Rochelle, 240 N. Y. 109; Foster v. Webster, 8 Misc 2d 61, 66.)
In our opinion it is no answer to plaintiffs’ contention that defendants’ property always has been low in relation to the surrounding terrain and has had a tendency to be swampy and to become flooded during certain seasons of the year and following heavy rains or quick thaws, and that the defendants would have to correct this condition before they could make any use of their land for any purposes whatever, and that the existence of the drainage and sanitary easements make it easier for defendants to handle the surplus waters that existed prior to the work to be done by the plaintiff drainage district within the bounds of the easements acquired.
Consideration should be given to and allowance made for additional expense, if any, to develop and the limitations imposed in developing defendants’ land for residential purposes (the highest and best economic use of the premises found by the Commissioners) in consequence of the need to accommodate such increase in surface waters thus cast thereon occasioned by the condemnation and the use to which the condemned parcels are to be put by plaintiffs. Such expense undoubtedly would be contemplated by a prospective purchaser for development purposes and weighed by him as a factor in arriving at the fair and reasonable market value of the premises. A finding should be made in connection therewith by the commission.
Judge Blatjvelt in his memorandum of March 31, 1961, referring to the previous report of the Commissioners which came before him for confirmation, and particularly with reference to the drainage easements, wrote among other things: “In order that the report can be properly reviewed, it should explicitly specify and describe the nature and extent of the easements for which compensation is being awarded, so that the extent of the burden on the servient estate can be ascertained, and what rights, if any, are reserved to the owners of the fee. Specifically, the report should make definite whether or not the easements provide that the drains are to be covered or open and what rights, if any, are left to the defendants to use the covered surfaces for cultivation, the erection of structures thereon or for any other purposes. If the easements taken are solely for *538 drainage purposes, the report should so state.” And continuing in a separate memorandum concerning the sewer easements, among other things wrote: “ In order that the report can be properly reviewed, it should explicitly specify and describe the nature and extent of the easements for which compensation is being awarded, so that the extent of the burden on the servient estate can be ascertained, and what rights, if any, are reserved to the owners of the fee. Specifically, the report should make definite what rights, if any, are left to the defendants to use the covered surface of the sewer line for cultivation, the erection of structures thereon or for any other purposes. If the easements taken are solely for sanitary sewer purposes, the report should so state.”
Although the amended report submitted and filed by the commission in each of the takings for drainage and for sewer purposes does describe the easements, permanent and temporary, verbatim, in the language of the separate petitions and orders made and entered thereon, we do not think that the amended report in each taking supplies completely the requirements found lacking by Judge Blatjvelt. We discuss this phase of the amended reports in greater detail hereinafter. We shall not describe the easements. We quote the nature and extent of the same.
As to the easements for drainage purposes of which there are two:
With reference to the first of these easements as the same is designated and set forth in the amended report at page 4, it is set forth therein that the nature and extent of said easements, permanent and temporary, for which compensation is being awarded, are as folloAvsA perpetual easement to construct, maintain, operate, replace, repair, reconstruct, enlarge, or improve an underground drain pipe in the lands of defendants with the right to remove all trees, brush, and structures, if any, from the surface of the land over which said easement is acquired, and to keep the same free from trees and brush. The owner of the fee shall not plant or maintain trees, shrubs or structures on said land but may use the same for crops, lawns, pastures or similar uses and for any use not inconsistent with the purposes of the easement; and upon any entry or re-entry, the said Drainage District shall restore the surface of the soil as nearly as possible to the same condition before said entry or re-entry.”
With reference to the second of the drainage easements as the same is designated and set forth in the amended report at page 5, it is sot forth therein that the nature and extent of the easement *539 described for which compensation is being awarded, is as follows: “ A perpetual easement for drainage purposes including the right to construct, maintain, operate, replace, repair, and improve an open drainage ditch through and over the surface of the lands of defendants with the right to remove all trees, brush and structures from the surface of the land over which said easement is acquired and to keep the same free of trees and brush and structures. The owner of the fee shall not plant or maintain trees, shrubs or structures on said land but may use the same for crops, lawns and pastures insofar as such use is not inconsistent with the use of the land for said drainage purposes; and upon any entry or re-entry, said Drainage District shall, except for the alterations involved in the work on the drainage ditch, restore the surface of the soil substantially to the condition in which it was before such entry or re-entry. ’ ’ The sewer easements, of which there are two, are described in the amended report of the Commissioners in connection therewith, and it is stated therein that the nature and extent of the sanitary easements for which compensation is being awarded are as follows: “ Perpetual easement hereinabove described for sanitary sewerage purposes, including the right to lay, construct, maintain, operate, replace, repair, reconstruct, enlarge, and improve an underground sewer line or lines and two manholes, through, under and across the lands of the defendants. The rights of the holder of such easement, and of the owners of the fee over which the easements is to be acquired, are as follows: Upon any entry or re-entry, the surface of the soil shall be restored by Henrietta Sewer District No. 1 at its expense,, so that it will be in substantially the same condition after completion of the work as before. Said Sewer District shall have the right to remove all trees, brush and structures, if any, from the surface of the land over which the said easements are granted, and to keep the same free of trees and brush. The owner of the fee shall not plant or maintain trees, shrubs or structures of any kind on said land, but may use the same for farm crops (other than orchards), and for lawns, pastures, and similar uses and for any use not inconsistent with the use and enjoyment of said easement. The holder of the easement shall pay for reasonable crop damage upon entry or re-entry. With regard to the temporary easement over the land secondly hereinabove described, such easement shall be for use during construction only on the original entry and upon any re-entry by men and machinery, for the storage of earth during the periods of time necessary for laying and constructing said sewer line. ’ ’
*540 It is stated in plaintiffs’ reply brief that the sanitary sewers contemplated in connection with the easement taken for that purpose “ are all contained in sewer pipes and are installed well below the surface of the ground * * *. The easements taken for storm water drainage purposes may be in part in pipes below the surface of the ground and may in part be open drainage ditches or water courses.” It is also stated in plaintiffs’ reply brief, that: “ The easements were so located across the defendants’ property that they would least likely interfere with any normal or anticipated use of the property for residential subdivision purposes.” Continuing the reply brief states: “ In fact there is in the record a subdivision map prepared by Mr. Sear, a licensed surveyor, indicating a natural and normal layout of lots, streets and driveways within the defendants’ property. This proposed subdivision map has located on it the easements that have been acquired and the Commissioners were aware of the fact that the easements were so located as to interfere as little as possible with the use of the defendants’ property. The Commissioners necessarily took into consideration what inconvenience and loss of use of land might be occasioned, and their award is predicated upon this fact as well as upon other facts presented in evidence and considered by them.”
It is very obvious that the Commissioners leaned most heavily upon the testimony of Mr. Sear and the map made by him which was admitted into evidence. This map sets up a hypothetical subdivision with a projected layout of lots, streets, and driveways within defendants’ property upon which there is superimposed the easements appropriated in such manner and so located as to interfere “ as little as possible with the use of defendants’ property”, and it was according to said map that the extent of the burden of the easements upon defendants’ land was established when the Commissioners made their determination on this most important factor involved in these takings. Evidence of this purely theoretical subdivision being too uncertain and conjectural, in our opinion, constitutes no adequate and proper basis of evaluating market value before and after, and of establishing the burden of the easements upon the servient estate of the defendants. (4 Nichols, Eminent Domain, § 12.3142, subd. [1]; St. Agnes Cemetery v. State of New York, 3 N Y 2d 37, see, also, dissenting opinion therein.)
It is urged in plaintiffs’ reply brief that: “it is common knowledge that the relocation of easements is possible to accommodate an otherwise acceptable subdivision plan. Mr. Sear, one of the plaintiffs’ witnesses, indicated as much when he testified *541 that the storm water drainage could be relocated in a closed pipe and the easements could be moved to allow for streets and different subdivision plans. The Commissioners and property owners are aware that negotiation takes place regarding subdivision plans agreeable to the town and the subdividers.
“ It is certainly within the province of the Commissioners to consider the above factors in determining the damage sustained.” We are unable to agree with the conclusion in the sentence immediately above quoted. Whether the factors mentioned in the above quote could or would come to pass is beside the point for it does not settle the problem before us. The fact is that no provision is made in the takings for such prospective changes which have been used as factors by the Commissioners in their determination of damages herein.
Structures may not be ‘1 maintained ’ ’ upon the appropriated parcels according to the provisions of the easements. Defendants contend that they would not be able to place any structure of any kind thereon including abutments necessary to bridge the open drainage ditch in order to fully develop their land for residential purposes without obtaining a release of the Town of Henrietta, New York. Mr. Sear, testifying for plaintiffs, expressed what we believe was his opinion, but which, of course, is not binding at all upon the town, that the open ditch could be bridged within the limitations of the easements. It would seem that the Commissioners adopted that theory.
In Black’s Law Dictionary (4th ed.) the word “ structure ” is defined as follows: “ Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. * * * That which is built or constructed; an edifice or building of any kind. Poles connected by wires for the transmission of electricity.” (Cited thereunder is Forbes v. Willamette Falls Elec. Co., 19 Ore. 61. See, also, Muench v. Steel & Masonry Contr. Co., 155 App. Div. 409, affd. 217 N. Y. 704; Armenti v. Brooklyn Union Gas Co., 157 App. Div. 276; Loesch v. Long Is. R. R. Co., 165 App. Div. 753.)
The Town of Henrietta, New York, may make to the fullest extent such use of the appropriated parcels as it is authorized to make under the provisions of the taking. (Spinner v. State of New York, 4 A D 2d 987, 988; Dillenbeck v. State of New York, 193 Misc. 542, affd. 275 App. Div. 871; Robinson v. State of New York, 3 A D 2d 326; Morton v. State of New York, 8 A D 2d 49.) The existence and the continuance of the rights reserved to the owner to use the appropriated premises depend entirely upon what actions may be taken by the Town of Henrietta, New York, *542 within its taking authority and in the final analysis whatever permitted use is made by the owners is valid only if not inconsistent with the use of the land by the town for easement purposes. Such is the yardstick established by the appropriation and such permitted rights of the owners could be terminated thereunder at any time.
6 £ If the State wishes to limit its rights under the easement to the continuance of presently existing use or to the prospective use envisaged by its expert, it should do so by formal action, by deed, release or otherwise. In the absence of such modification, the damage must be evaluated on the basis of what the State has a right to do under the terms of the easement as appropriated (cf. Dillenbeck v. State of New York, 193 Misc. 542, affd. 275 App. Div. 871; Robinson v. State of New York, 3 A D 2d 326). ’ ’ (Spinner v. State of New York, supra, p. 988; Morton v. State of New York, supra.) “ Privileges in the property taken, the enjoyment of which is not ordinarily compatible with the exercise of the easement taken, cannot, however, be considered in awarding compensation unless they are formally established by the condemnation proceedings; privileges which are merely permissive and subject to revocation by the condemning party at any time cannot be availed of in reduction of damages, and an allowance of certain privileges as damages after a definite public easement has been taken is objectionable as a payment of compensation in a medium other than money.” (4 Nichols, Eminent-Domain, supra, § 12.41 [2].)
It seems to us that the owners’ rights in the appropriated parcels have not been evaluated according to the express terms of the appropriations, but have been evaluated with some presently non-existing implication of possible change and of beneficial enlargement thereof in mind, which we believe constitutes an unwarranted basis for the determination of the commission. Such basis, it seems to us, is too uncertain on which to hold that the defendants have any beneficial interest in the appropriated parcels. This goes also for the temporary easements which may be exercised without limit as to time for the purposes therein stated.
All of the foregoing is of great importance for where part of a parcel of real estate is taken for condemnation for public use, the owner is entitled to be compensated for the value of the part taken measured by the difference between the fair market value of the entire property and that of the remainder after the needed portion has been pre-empted, including compensation for any damages resulting to the portion of the premises not taken, not only by reason of the taking of the property required, but *543 also by reason of the use to which the property taken is put. (Condemnation Law, § 14; South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301; Matter of City of New York [Cons. Gas Co.], 190 N. Y. 350; County of Erie v. Fridenberg, 221 N. Y. 389, 393; Matter of Bd. of Water Supply of City of N. Y., 277 N. Y. 452; Matter of City of New York [Whitlock Ave.], 278 N. Y. 276, 282; Town of Fallsburgh v. Silverman, 286 N. Y. 594; Matter of City of New York [Rockaway Beach], 288 N. Y. 75, 77.)
It is well established that ‘ ‘ An award will not be sot aside for technical errors in the admission or exclusion of evidence, but will be permitted to stand, unless it appears that the commission adopted an erroneous principle in fixing the damages awarded to the owner, or unless the error so affected the result as to bring about an injustice to the complaining party. [Citing cases] ”. (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 587.) We are of the opinion that the defendants’ exceptions numbered “3” and “ 4 ” are well taken and must be allowed, for we believe that the commission adopted an erroneous principle in fixing the damage awarded to the owners and the error so affected the result as to bring about an injustice to the complaining parties in connection with the matters in said exception set forth. We, therefore, allow said exceptions.
In the light of the foregoing we are constrained to conclude that the motion to confirm the amended report of the Commissioners in each of the above-entitled appropriations must be denied; and the matter of each of the appropriations herein is remitted to the same Commissioners of Appraisal for reconsideration, including a rehearing and the taking of additional evidence, if they be so advised that the same is necessary, and for the making and filing of a further amended report not inconsistent with this memorandum.
We note from the amended reports that the Commissioners met on 17 separate occasions to hear testimony, view the premises, to deliberate, to prepare their initial report and to reconsider and prepare the amended reports. Under that part of the request for relief set forth as ‘ ‘ and such other and further relief as may be proper ”, the statutory compensation of the Commissioners is allowed for the number of days set forth in the amended reports. It docs not appear that any expenses have been incurred by the Commissioners according to their amended reports. Should it be found advisable, such statutory compensation of the Commissioners may be allowed and paid as an interim payment to date, and the order to be entered hereon may provide for such payment.