REID, Judge.
This is an expropriation suit filed by the State of Louisiana, through the Department of Highways against Mrs. Rosalie G. Moyse, born Gottlieb, wife of Herman Moyse, Lewis Gottlieb, Louis Mayer, Louis W. Babin and Millie Mayer Preis, born Mayer, wife of Lehman K. Preis, to expropriate two parcels of land in the City of Baton Rouge, Parish of East Baton Rouge at the intersection of Airline Highway and Plank Road.
*150 The first tract denominated 1-A in the petition contains 11.226 acres and the second tract denominated 1-B in plaintiff’s petition contains 0.239 of an acre. The first tract is an “L” shaped piece of land running some 1320.2 feet on the west side of Plank Road and 1754.8 feet on the north side of Airline Highway. On the corner facing the intersection it measures 182.66 feet.
The second piece of property is located on the south side of Airline Highway to the south of the west end of the first piece of property. Attached to plaintiff’s petition is an estimate of just compensation signed by Lowell M. Roseman and Leroy Frantom in the amount of $147,520.00. The said amount was deposited in the Registry of the Court and withdrawn by the defendants pursuant to Order of Court. Defendants filed an answer in which they deny the amount tendered is just and adequate compensation. Defendants pray the amount be increased to $409,500.00, which includes $249,500.00 for the actual cash value of the property taken and $160,000.00 for damages to the remaining property of respondents.
By supplemental and amended answer defendants ask that the fees of their expert appraisers be fixed in the sum of $2000.00 each.
The case was tried and submitted and the Judge of the Lower Court rendered judgment in favor of defendants and against plaintiff, fixing the amount of the fair market value of the property taken, as of the date of the taking October 29, 1959 in the sum of $170,515.00, awarding just compensation for damages to the remainder of the property as a result of the taking at $87,750.00, making the total amount of judgment $258,265.00, subject to credit of $147,520.00 deposited by the plaintiff in this Court, leaving the balance due of $110,745.-00 and further rendering judgment in favor of defendants and against plaintiff for interest in the amount of 5% per annum from October 20, 1959 until paid, and fixing the fee of the appraisers at $1000.00 each, and for their appearance in Court at the sum of $150.00 each, computing the rate of pay at $100.00 per day. The Lower Court further fixed the fee of the registered Civil! Engineer in the suit at $50.00 and the plaintiff was cast for costs.
From this judgment the plaintiff prosecutes this appeal.
The defendants filed an answer to the-appeal asking for an increase in the judgment to the amount prayed for in their original answer.
Subsequent to the rendition of this judgment Louis W. Babin, one of the defendants, died on July 16, 1962 and, by motion and order dated November 28, 1962, Mrs.. Belle Stanard Babin, duly authorized and confirmed testamentary executrix of the-Succession of Louis Winbourne Babin, No.. 15586 probate, was substituted as party defendant in this matter.
The plaintiff-appellant makes the following assignment of errors:
“1. The District Court erred in permitting the witnesses for the defendants, to arbitrarily subdivide a portion of the-property taken and value each portion separately and base their valuation on a. total of all of the parcels in the arbitrary subdivision.
2. The District Court erred in substituting its own opinion for that of the expert witnesses who testified in the-case.
3. The District Court erred in disregarding the testimony offered by the State.”
The defendants had a duly licensed surveyor, Mr. John I. McCain make a map-of the property sought to be expropriated. The map was offered in evidence, over the-objection of the plaintiff, and divides the-property into three separate parts denominated 1 — A—1, 1 — A—2, and l-A-3. The tract-1-A-l was the corner tract of the property-sought to be expropriated and had a depth-of some 500 feet, and contains 7.856 acres. *151 Tract l-A-2 was a long, shallow strip and ran from the corner of the first tract along the north line of Airline Highway and contained only 1.974 acres. The third tract, l-A-3 ran from the corner of the larger tract in a northerly direction along Plank Road and contained only 1.416 acres. The surveyor testified he made this survey in accordance with instructions of the defendants’ attorney. The survey was brought about by the fact that there was a difference in depth of the property fronting on Plank Road and property fronting on Airline Plighway. The property frontage on Plank Road, except for a very small portion was .zoned C-4, which is commercial property .and had a depth of 500 feet. The property fronting on Airline Highway was also .zoned C-4, but only had a depth of 300 feet. The remaining property of the defendants was mostly zoned A-2, which is residential.
The defendants produced three expert appraisers, Mr. Verdie Reece Perkins, Mr. Kermit Williams and Mr. Durwood Gully.
Mr. Perkins was the first expert appraiser -to take the stand and he used five compa-rables. The first comparable was a sale from Percy Guillory to Pope’s, Incorporated dated July 8, 1958 of one acre of land 153 feet front by a depth of 284 feet. The price was $30,000.00, or approximately '$200.00 a front foot. This property was 14 blocks west of the subject property.
Comparable No. 2 was a sale from Jasper A. Mellili Jr., to Socony Mobile Oil Co. Inc., running 205 feet on Airline Highway by 194 feet on the west line, 168.4 feet on the east line which sale was dated December 28, 1958 for a consideration of $45,000.00. This is approximately $225.00 per front ■foot or $56,000.00 per acre. This tract is located 5 blocks east of the subject property.
Comparable No. 3 was a sale from Joe Lipsey to Edgar V. Kirby of 1.896 acres in Addition to Subdivision Loudon which property fronts 213.31 feet on Airline Highway. The sale was dated April 7, 1959 for •the price of $42,000.00 which is approximately $220.00 per front foot or $22,000.00 per -acre. It was located approximately 11 blocks east of the subject property.
Comparable No. 4 was a sale from C. B. Langlois, et al. to Tremarco Corporation, dated May 8, 1957 of Lots 1, 2, and 3 in Langlois Place, corner of Cannon Street with a frontage of 142.2 feet along Plank Road, or 141 feet along Cannon Street, 135.1 feet on the east 185.7 feet on the south. The consideration for this sale was $31,-000.00, which is approximately $220.00 per front foot, or approximately $60,000.00 per acre. The location is approximately 4 blocks south of the subject property, located on Plank Road.
Comparable No. 5 was a sale from Arthur C. Lewis Jr., to the Continental Hotel Corporation of 1.75 acres fronting 223.2 feet on Airline Highway by 430 feet on one line, 331 feet on the other, and 200 feet across the rear. The sale was dated March 4, 1958 for the price of $50,000.00 which figured approximately $220.00 per front foot or approximately $28,000.00 per acre. It is approximately 11 blocks from the subject property.
In addition, Mr. Perkins used two other comparables, one a sale on September 18, 1959 from A. K. Gordon et al. to J. L. Mallet of approximately 5 acres fronting 500 feet on Airline Highway for $84,000.00. This property sold for approximately $17,-000.00 per acre or $170.00 per front foot. It is 21 blocks from the subject property, a little over a mile on the east. Another comparable he used was the sale from Baton Rouge Savings and Loan Association to Wallace Woodard. This sale is dated June 11, 1959 for $20,000.00 and is located approximately one mile west of the intersection of Airline Highway and Plank Road. The price was $20,000.00, and after deducting the salvage value of a frame structure located on the property at $1000.00 the value was fixed at $190.00 per front foot, or approximately $66,000.00 per acre.
Mr. Perkins appraised tract 1-A-l at $183,200.00; tract l-A-2 at $39,480.00 and *152 tract l-A-3 at $23,320.00, giving a total valuation of $251,000.00. The value of $4780.00 for the small tract on the south side of Airline Highway does not seem to be in dispute. This added to $251,000.00 gives the total appraisement of the land taken at $255,780.00.
Mr. Perkins testified he used three approaches to this value:
“A. I used three approaches to this value. I have only one value for it, which was previously stated, but I did use three approaches to check it. The first approach, by averaging the width across the rear and across the front which is a figure of 700 feet plus 1132 feet, I get an average calcuable frontage of 916 feet. This is an accepted manner in calculating the frontage for an odd shaped lot or site. By using a value of $200.00 per front foot, the answer is $183,200.00. The second method, by calculating 550 feet on the Airline by a depth of 270.-32 at $225, you get $123,750. Add the Plank Road frontage, 330 feet at $200, gives $66,000, or a total of $189,750. By calculating the acreage of 7.836 at $25,000 per acre, you get $195,900. This is a very important corner and should be worth approximately 25% more than the comparables used because they were not located on such an important corner. However, by being reasonable and using the comparables as they are, the front footage shown ranges $220 to $225 per front foot. The acreage ranges from $20,000 to $60,000 per acre. However, the $20,000, the $30,000 and the $28,-000 per acre are the three lowest on an acreage basis and these I have given the most weight in analyzing acreage values. I therefore reached the conclusion that $187,500 would be a reasonable figure for this portion. That is not an exact average of the three methods but it is very close to it, and it figures less than $25,-000 per acre.”
Mr. Perkins in figuring the damages tO' the remainder of the property as a result of the taking testified as follows:
“A. Damages are always very difficult for us to ascertain exactly. I think anyone looking at this property before and after would realize that the remainder has been damaged. I will first give my figures and then my reasons. For the property remaining to the rear of l-A-2 which is 1354.8 feet along the Airline Highway, I have assigned a damage approximately $60 per front foot, or $81,288. Item 2 would be tract l-A-3, this is, the property remaining behind tract l-A-3, which has 770.2 feet front on Plank Road. In my opinion the damage to this remainder is $46,-212. Tract 1-B which is the small tract south of the Airline Highway, the property behind this will be deprived of approximately 382 feet front on the Airline and of course is removed to a service road. Approximately 100 feet of this is low because of Monte Sano Bayou, and I have figured the damages, in fact, to 282 feet, on the same basis as the other tracts, making a total of $16,920. In addition to these three figures, it is my opinion that the damage to the remainder of the entire tract is $20,000 because you have to go some 1300 feet north of the present overpass to get into the property on the Plank Road and some 1800 feet to the west to get into the property from the Airline Highway. Your ingress and *153 ■egress for the entire property has been drastically changed plus the fact that it has all been placed on •a road that you would probably •call a private road. It is hardly a .■service road because there is a separate service or ramp road between the Airline and the road that adjoins the property. In arriving at these damages I have •considered many factors. I ■would like to state some compa-rables sales. Before giving these ■comparable sales, I would like to state that two service stations, •one a Shell and the other an Esso -approximately 1000 feet east of ■the subject property on the south ■side of the Airline Highway, have been closed since they were placed ■on a service road. They were op•erating on the Airline Highway and had to be closed after being placed on the service road. So •as not to confuse previous com-•parables, I would like to designate •these three as “X, Y, Z” for dam-age purposes. “X”, Charles W. Lamar Jr. sold to the TSC Motor Freight Lines, Inc., November 7, 1958, Lots C and D and a portion •of E of Chas. W. Lamar tract for .$25,000. This had 369 feet front•age on the — I shall say on the Airline Highway. It was assumed to be on a service road and 'was so known by the parties in■volved. This was 2.8 acres. It sold for $80 per front foot, or •$9,000 per acre. This tract is located right across the street and ■catehcornered from the subject •property. The next, which I would like to call “Y”, TSC Motor Freight Lines sold this same property to the Airline Park Realty Corporation, June 24, 1959 for $32,500, $90.00 per front foot, or approximately $11,500 per acre. There is located on this property today a bowling alley. The next comparable January 19—
“Q: Let me interrupt you for a moment. Just what are those com-parables being offered to demonstrate ?
“A: These are offered to show that while property along the Airline Highway at this same time was selling for $200 and $225 per front foot, and from $20,000 up to $60,-000 per acre, this property on the service road in the same area sold for the figures mentioned, $80 and $9000 an acre and this $90 and $11,500 per acre, less than half of the other properties. The next sale was January 19, 1960. Charles W. Lamar sold to Airline Plank Realty Corporation Lot B, having 443.8 feet front on the service road, west of Lot 3 above mentioned, and very close to Plank Road. This is approximately $50 per front foot. It was bought by the bowling alley to have parking adjacent to their building. It was a triangular piece with a whole lot of frontage and the price figure was just under $20,000 an acre. I have a — it still did not bring anything like it would have brought had it faced the Airline Highway or the Plank Road. In addition to the factors mentioned and the experience of the service stations cited, which are visible for anyone to see, it is my opinion based on experience in the real estate business that the use of this property now placed on the service road is limited; the number of purchasers has been very much reduced, and in all practice it is doubtful that the property might sell for the remaining value, as indicated by my ■ appraisal.”
*154 He fixed the damages to the remaining property at the sum of $164,420.00.
Mr. Kermit A. Williams, the second appraiser for the defendants appraised the value of the property taken at $264,480.00. He used the five appraisals first listed by Mr. Perkins. He appraised the property 1-A-l 7.836 acres at $25,000.00 per acre or $195,900.00. He appraised l-A-2 containing 1.974 acres at $20,000.00 per acre, or a total value of $39,480.00. He appraised the tract l-A-3 containing 1.146 acres at $20,-000.00 per acre, or $28,320.00.
With reference to the severance damages he used a comparable sale of land sold on a service road with the buyer having full knowledge that it was on a service road. These three comparables were the same ones mentioned by Mr. Perkins. He fixed the entire commercial tract, before the taking, at $659,980.00. This is the value of the entire commercial tract, deducting his value of the land taken of $268,480.00, left a value of the remainder of the commerical property of $391,500.00. He gave an assigned value of $12,000.00 per acre as indicated by the three comparable sales on the service road which had been previously cited and multiplied this by 19.3 acres remaining in the entire tract for a total value of $231,-600.00, deducting this amount from the value of the same before the taking of $391,500.00, leaving a difference of $159,-900.00 which he testified as the severance damages.
The third expert appraiser for the defendants was Mr. Durwood Gully. He used the same comparables as the other two appraisers and his total valuations of the property taken are as follows :
Parcel 1-A-l $192,825.00
Parcel l-A-2 43,428.00
Parcel l-A-3 31,152.00
Parcel B-l 5,258.00
B-l is a smaller tract south of the Airline Highway.
He fixed the damages to the remaining-property as follows:
Parcel 1-A-l $ 20,000.00
Parcel l-A-2 89,416.00
Parcel l-A-3 50,833.00
Parcel B-l 18,612.00
Total, $178,861.00
The Department of Highways did not use the two appraisers who signed the certificate of value and compensation. They used instead Mr. J. Clifford Doiron, and Mr. Leroy Cobb. These two appraisers did not place any values for severance damages although the two appraisers who appraised the property originally fixed severance damages in the sum of over $20,000.00. No explanation is offered as to why these two appraisers placed this severance damage on the property.
Mr. Doiron was the first witness on behalf of the plaintiff. He approached the value of the property by first making an investigation of the property involved in this case, or rather the whole property owned by the present owners. According to his testimony he valued the whole property, before the taking, containing 253.69 acres, of which 43 acres was zoned as C-4 and 210.39 acres was zoned as A-2 land.
His first comparable was a sale from Lamar to TSC dated November 10, 1958 for a consideration of $25,000.00. It contained 2.696 acres with a frontage of 369 feet, and' an area of 117,437 square feet, and the price per acre was $9273.00, and the price per square foot was 22‡. This property is located directly across the intersection and immediately east of Foodtown and less than 1000 feet from the subject property.
His next comparable was a sale of the same property from TSC to Airline Plank Realty Company dated June 30, 1959 for a consideration of $32,500.00. This fixed the price per acre at $12,054.00, and the price per square foot at 27‡.
His next comparable was a sale from Davis, Wittie, & Davis dated March 4, *155 1958 for a consideration of $181,000.00 for 11.5 acres conveyed. The property was five minutes time distance-wise from the subject property. Mr. Doiron valued the price of the land at $90,000.00, deducting the value of improvements which put a value of $7913.00 per acre or 18^ per square foot.
The next comparable was a sale from McAuffie to Southern Motels, Inc. (Holiday Inn). This sale was dated January 14, 1958 for $86,460.00 and covered 5.8 acres with 448 feet front. It contained 252,648 square feet and the price per acre was $14,-900.00 and the price per square foot was 340.
The next-comparable was a lease from Kildare to Airline Development Company, dated May 20, 1958 of a 34 acre tract containing 2564 front feet on Airline Highway and Greenwell Springs road, and contained 1,481,040 square feet. Counsel for defendant objected to the use of this comparable, but the Court admitted it subject to the objection. He used the total value of this leased property on the graduated increase in rents at $346,518.00. He divided the 34 acres involved in the lease and fixed a value of $10,200.00 per acre, or 23.40 per square foot.
Mr. Doiron moved some ten minutes time from this property to the Nesser Overpass and used a sale from L. W. Eaton to John Schwegmann. This sale was dated March 25, 1957 and the consideration was $90,000.00. The frontage was 1000 feet on the west side of Airline Highway by a depth of 600 feet, or a total area of 600,000 square feet, and the price per square foot was 150. This property is about 8)4 miles from the subject property. The property amounted to 1.37 acres and the price would be $66,000.00 per acre.
The last comparable of C-4 land is the sale from Appleby to Judson Baptist Church dated December 3, 1957 for a consideration of $218,765.00. This property contained 21.99 acres, running 808 feet front on the west side of Airline Highway and the price per acre was $9948.00, and the price per square foot was 230.
With reference to A-2 land Mr. Doiron testified that he used a sale from Badley to Monteray of 191 acres. He evaluated it by a development method approach. He testified there were four ways to value land: by development, abstraction, land residual and land comparisons. By the development method he estimated the value of A-2 land at $1725.00 per acre. The Monteray sale was located on the south side of the Hooper Road about one and a half miles east of Plank Road. He valued the whole property, before the taking at $700,097.00 of which he allocated $400,073.00 for the C-4 land and $300,024.00 for the A-2 land. With his value of 250 per square foot for the C-4 land, this made a value of $11,000.00 per acre. He computed 10.247 acres as being the C-4 land taken, and therefore fixed a value on it of $112,725.00 The 29iooths or JSth of the A-2 land he valued at $1725.00 per acre which gave a value of $345.00. He further testified that one-half acre of C-4 land was burdened by the United Gas pipe line. This would make the unburdened fee allocated to this one-half acre $5500.00, but because it was burdened by this servitude he used 50% of the same in arriving at its value. With reference to the little parcel 17 feet below the grade of Airline Highway in the depth of the Monte Sano Bayou he put a valuation of $1650.00 on the naked ownership. He used 50%, and as a result he came up with a value of the part taken as $117,500.00. He further testified that he used his comparables because of the fact that they were close to the same acreage as the 43 acres of C-4 property out of which the subject property was taken.
Mr. Leroy Cobb, the next appraiser, testified that he had only been an appraiser in Louisiana since 1958. He used the following sales as comparables: the sale from David J. McAuffie to Southern Motels, Inc. (Holiday Inn property). This property sold on January 11, 1958 for $86,400.00 or $14,900.00 per acre. It is about one mile east of subject property.
*156 His next comparable was a sale from Heidel Brown to National Investment Life Insurance Company of Louisiana. This sale was dated April 23, 1959 and the price was $180,000.00. It was located on the west side of Airline Highway just east of the subject property. It covered 15 acres and it sold for $12,000.00 per acre.
The next comparable was from Charles Lamar Jr., to TSC Motor Freight Lines. This sale was dated November 10, 1958 and the price was $25,000.00. The tract covered 2.696 acres which made the price per acre $9272.00. It was located on the opposite tangent from the subject property behind Foodtown, fronting on Airline Highway.
The next comparable was the sale from TSC Motor Freight Line to Airline Plank Realty Company dated June 24, 1959. It covered the property set out in the previous deed, and the consideration was $32,500.00, or $12,054.00 per acre. It was located on a service road.
The next comparable was the sale from John B. Hearin Jr. to Hearin Tank Line, Inc., on December 30, 1958. This property covered 14.05 acres and the consideration was $80,000.00 or $5517.00 an acre.
The next comparable was the sale to Judson Baptist Church Association which has been set out heretofore in this opinion.
He further testified that he had been instructed to appraise the property taken as a part of the whole property and he was looking for comparables in size to the whole commercial land. He also testified that the highest acreage sale he found was $14,900.00 per acre. He discounted this because of the pipe line and that portion consumed by Bayou Sano and came up with the value of $11,900.00 per acre which gave him a total value for the part taken of $133,589.00. He did not appraise any severance damages because he said there were none.
There is no question but what the highest and best use of the subject property was commercial before the taking. It had been' zoned C-4.
It can be readily seen there is a wide-divergency of opinion among the appraisers-as to the value of the property taken. We feel that Mr. Cobb in his testimony clearly explained this when he stated that if all the-appraisers had come into Court under the-same premise they would have come up with relatively the same value. He testified the-Highway Department appraisers were instructed to appraise the whole property, then, appraise the subject property based on the-average of the whole. The defendants’ experts did not appraise the whole property but only appraised the subject property. These methods of appraisement were discussed by this Court in State of Louisiana, through the Department of Highways v. Circle Center Corporation, La.App., 148 So.2d 411. Section 2, Article 1 of our LSA-Constitution provides for just and adequate-compensation in expropriation matters. LSA-R.S. 19:9 defines the measure of compensation :
“In estimating the value of the prop-tery to be expropriated, the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed,, without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.”
The only damages that can be recovered are the value of the property taken,, plus damages to the remaining property..
“The amount due for private property expropriated for public purposes is its market value when taken and compensation for any damage that might be caused to remaining property” Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193.
Therefore, the question before us is to determine the value of the property taken, and the damages to the remaining property..
*157 Since the Court is of the opinion that you cannot take the entire property, consisting of some 253 acres and average its price per acre, and use that as a value of the subject property which is located at the intersection of two main traffic arteries of the City of Baton Rouge, and definitely of considerably more value than the remaining portion of the property, we see no objection to the using of a plat and dividing the subject property according to its location to arrive at its market value. The main portion of the property was appraised by the plaintiff’s experts on the basis of $25,000.00 per acre. The other two small pieces were appraised on a basis of $20,000.-00 per acre by Mr. Perkins. The Judge of the Lower Court concluded that a fair value to place on the C-4 property taken was on the basis of $15,000.00 per acre. He based this on what he considered the true comparable in this case of relatively small tracts of land.
The plaintiff’s appraisers fixed no valuation for severance damages, testifying there were none. However, the plaintiff in its petition set up the certificate of fair value and compensation, showing a severance damage of $23,332.00, so we do not think they are in a position to argue that there were not any severance damages. The appraisers for the defendants calculated the percentage of severance damages at slightly less than 37%. The Trial Judge fixed the percentage of severance damages at 30%. The appraisers who signed the certificate as to the severance damages at $23,332.00 did not testify so we have no means of knowing on what this was based.
This brings us to the question of allowance for the appraisers for services prior to the trial and to the per diem for testifying. We find nothing manifestly erroneous in the fees as fixed by the Judge of the Lower Court at $1000.00 to each appraiser, and fixing the fees of the experts for testifying in Court on the basis of $100.-00 per day. We believe these fees are reasonable and in line with our previous decisions.
We fail to find any error in the Judge’s awards in this case and feel that they are fair and proper. Therefore we are of the opinion that the judgment of District Court should be affirmed.
Affirmed