REID, Judge.
The State of Louisiana, through the Department of Highways, filed this suit to expropriate 3.99 acres situated in Section 37 T 6 S, R 1 E, Greensburg Land District, Parish of East Baton Rouge, - State of Louisiana, said property being located in the northeast corner of the intersection of Plank Road and Airline Highway and expropriated in connection with Project No. 7-09-29 Airline Plighway-Plank Road Interchange. • Plaintiff deposited the sum of $84,648.00 as just and adequate compensation for the land taken and the resulting damage to defendants’ property. The first certificate filed by the Department of Highways estimated the value of the land and improvements at $74,648.00 and damages at $10,000.00, making the total sum of $84,648.00. Prior to the trial of the case it was stipulated that the improvements taken were of a value of $1,000.00 and there is no dispute now as to that figure. On September 29, 1964 the date of the commencement of the trial, a second certificate was filed by the State estimating the value of the land and improvements at $80,900.00 and denying that any damages resulted to the remainder of the property. The defendants filed an original answer alleging that the amount tendered by the Department of Highways was inadequate and that the true value was $640,-730.00. Subsequently, in response to exceptions for particularizing the amount claimed, the defendants filed a supplemental answer reducing their claim for compensation to $334,000.00, placing a value of $119,940.00 on the land, $2,500.00 on the improvements, and $211,560.00 for sever-' anee damages.
The case was tried on the merits for a period of four days, and for oral reasons assigned the Trial Judge rendered judgment in favor of the defendants ■ in the sum of ,$100,000.00 as compensation for the land taken, $1,000.00 for the stipulated value of the improvements, and 5% thereon from May 29, 1959, as interest, provided that interest should not be paid on the sum of $84,648.00 previously deposited in the registry of-the Court. A judgment was signed in accordance with the oral reasons on October 15, 1964. Defendants took an appeal from this judgment seeking an additional sum for severance damages but did not seek an increase in the award for the land taken, stating that the award was substantially in accord with the values established by the witnesses. Plaintiff filed an answer to the appeal seeking to have the judgment amended to- *503 award the appellants just compensation in the amount of $80,900.00. Subsequent to the rendition of the judgment the plaintiff deposited an additional sum of $16,-352.00 in the registry of the Court and the sum was withdrawn by the defendants. It is from that judgment that this appeal and answer to the appeal lie.
At the time of the expropriation the property in question was owned by Nick Tessitore, Jr., and his brother Joseph Tes-sitore, and after the expropriation the brothers ‘sold and transferred the remainder of the property to Clover Leaf Shopping Center, Inc., a corporation whose sole stockholders were the Tessitore brothers.
The expropriated property is shown on Plaintiff’s Exhibit P-3 as parcels 2-A and 2-B, parcel No. 2-A consisting of 3.841 acres with a frontage of 259.65 feet on Plank Road and 1496.925 feet on the Airline Highway, and parcel No. 2-B situated further to the east, consisting of .157 acre with a frontage on Airline Plighway of 202.50 feet. The facts show that prior to the expropriation the property of defendants consisted of 16.781 acres which was not at the time commercially developed. It is undisputed that at the time of the taking the property in question had a very advantageous location, having frontage on both Plank Road and the Airline Highway, ■which intersection has a very high volume of traffic — local, state and interstate. The Trial Judge found that after the taking the access to the property was diminished and in his written reasons for judgment said:
“ * * * Formerly it had a frontage entirely along the Plank Road and Airline Highway, and now the entrance to this property is gained by virtue of an access road which was located in front of the property after the taking. The frontage on the Plank Road was completely removed. The only entrance from the Plank Road side of the property is on to Sumrall Street and then on to the service road. The entrance to the property on the Airline is at the far eastern edge of the property. Before the taking the property was more or less rectangular in shape and now, after the taking, has a somewhat irregular shape, the irregular portion being caused by the taking from the far western edge of the property. The Court considers that its removal from the two main highways to a service road has resulted in the 'greatest damage to the property.”
There is no question 'but what this finding by the Trial' Judge is correct
Despite the numerous allegations of errors set forth in the appeal and in the answer to the appeal, the issues involved herein revolve around two points, namely, whether the award of the Trial Judge to defendants of $100,000.00 for the value of the land expropriated was correct, and whether the Trial Judge was correct in not awarding defendants severance damages as prayed for
As in all such cases, both plaintiff and defendants had appraisers as expert witnesses, and as in all such cases the testimony of the witnesses as to the values vary. As a matter of fact, in this case plaintiff’s and defendants’ witnesses vary to such a degree that it sometimes appears the expert witnesses are not talking about the same property, The defendants used two appraisers as expert witnesses, Mr. Kermit Williams, and Mr. Durward Gully, both - of whom, have had much experience in dealing.with real estate in East Baton Rouge Parish, to prove the value of the property taken, and used Mr. Henry J. Birch, who was in charge of the Real Estate Department of National Food Stores, and Mr. Wilbur Marvin, who has had extensive experience as a developer of shopping centers, to show severance damages. All of defendants’ witnesses testified that the best use for the property prior to the taking was a shopping center, and the record shows that the property is presently *504 being used as a shopping center. There is presently located on the property, remaining after the taking, a large building which houses the Gibson Discount Store which has a 15 year lease at a rental of $3500.00 a month. There is also a beauty shop with a 5 year lease at a rental of $400.00 per month, and a barber shop with a 5 year lease with a rental of $180.00 per month. There are seven other rental units that are not, or were not at the time of the trial rented. The Trial Judge concluded that the evidence reflected that the property was at the time of the trial being essentially used, after the taking, for the same purpose that its highest and best use was before the taking. The landowners contend that although the property is being used as a shopping center they have suffered extensive damages because of the lack of access to the property and because the view of the property is obscured by virtue of the construction of the interchange and therefore it is impossible for them to obtain the best type leases for a shopping center.
Mr. Kermit Williams, appraiser for the defendant landowners, used two basic approaches, the front foot approach and the acreage approach. In valuing the property prior to the taking he relied on six sales, giving the greatest weight to the following sales:
Price Price Average Total
Date Acreage per ff Per Acre Measurement Price
Lewis to Continental Hotel Corp. 3-4-58 1.75 $201.61 $25,651 223.2'x 342' $45,000
Guillory to Pope’s Inc. 7/8/58 1 196.08 30,000 153' x 284' 30,000
Lipsey to Edgar W. Kirby 4/7/59 2.187 196.90 19,201 213.31' x 420' 42,000
All of these were located one-half to three-fourtlis mile from the subject property. On the basis of front footage he determined the value of the property in question at $200.00 per front foot, or $102,400 for 512 foot frontage on the Airline Highway. Using the acreage basis he determined that 11.68 acres of the expropriated property was worth $25,000 an acre and 5.16 acres at the far eastern end of the property was worth $20,000 an acre. He further determined that the part taken at the intersection of Plank Road and Airline Highway had a value of $25,000 per acre or $100,000 for the whole part taken.
Mr. Durwood Gully, also appraiser for the landowners, used both the acreage approach and the front footage approach but testified that he felt the acreage approach in this case was the most appropriate. He used the same comparable sales as Mr. Williams and added an additional sale. He also arrived at a front foot value of $200.00 per front foot. He divided the property into two tracts, one fronting 259.-65 feet on Plank Road by a depth of 100 feet, on which he increased the value by 25% because of its location at the corner of Airline Highway and Plank Road and gave it a value of $54,912, and the other fronting 312 feet on Airline Highway by varying depths, on which he placed a value of $200.00 per foot and gave it a value of $72,400 or a total for the two tracts of $127,312.00. On an acreage basis Mr. Gully arrived at a figure of $25,000.00 per acre, but because the whole tract was on *505 the comer of Plank Road and Airline Highway he increased the value per acre by 10% or $27,500.00 per acre and arrived at a total value of $109,972.00 for the 3.99 acres taken.
The plaintiff used as a witness Mr. Darrel V. Willet of Pineville, Louisiana, who by his own testimony was not overly familiar with property values in East Baton Rouge Parish. Mr. Willet used an acreage basis and divided the tract into two parts, one with 5.113 acres at the eastern edge of the property which he valued at $3400.00 an acre, and the other with 11.668 acres which he called the frontage property and which he valued at $20,000.00 per acre, to make a total of $251,685.00. He then multiplied the 3'.998 acres actually taken by the figure of $20,000.00 per acre and arrived at a value of $79,960.00 for the land taken. He used some 15 or 16 comparable sales in arriving at his valuation.
Mr. Karl Snyder also testified for the plaintiff and also used some of the same sales as Mr. Willet. He, too, arrived at a value of $20,000.00 an acre. His testimony will show, however, that some of the comparables he used in the immediate area were in line with the landowners’ contention and he offered no satisfactory explanation as to how he arrived at the figure of $20,000.00 an acre, and he seems to have made no distinction as to the property taken being a corner tract. In commenting upon the wide variance of appraisals the Trial Judge said:
“However, as you can see from the wide variance in methods and means by which the real estate appraisers arrived at value that the Court has a difficult job in determining which method most accurately reflects value. However, the Court has decided that probably the acreage approach was the most consistent at least. Mr. Williams’ opinion on the acreage approach was that the value of the land taken was worth $25,000.00 per acre and you noticed that Mr. Williams gave an increase for this particular part, because it had frontage on the Airline Highway and on the Plank Road. He, therefore, assigned a value of $25,000.-00 an acre for this particular portion and then assigned a value of $20,000.00 an acre for what he called property that had no effective frontage on the Airline Highway and located at the eastern end of the property. Mr. Gully assigned $27,500.00 an acre, but added on another $2500.00 per acre because of the corner influence. Mr. Willet and Mr. Snyder both arrived at $20,-000.00 per acre. However, the Court believes that, because this was a prime piece of property located at one of the busiest intersections in the Parish and because of the high traffic volume that passed the place, its location and accessibility, and because of its economic advantages, being a place where industrial workers pass back and forth to and from their jobs, that the most accurate determination of the value of the property taken would be $25,000.00 per acre and that would amount to some $100,000.00, if you multiply $25,-000.00 times 3.998 acres or 4 acres. I believe there was dictated into the record a stipulation that the value of the improvements taken was $1000.00, so you add to that $1000.00 and the value of the part taken plus the improvements is $101,000.00 and the Court makes an award in that amount to the landowners for the part taken.”
An examination of the testimony of all of the appraisers certainly indicates that the Trial Judge was not in error in arriving at his conclusion as to the value of the land taken.
From the testimony in this matter it can easily be seen that the appraisers for the landowners showed a greater familiarity with the land values in the immediate area than the appraisers for the plaintiff. As pointed out in State Through Dept, of Highways v. Moyse et al., La.App., 151 So.2d 149, the Department of Highways *506 did not use the two appraisers who signed the certificate of valuation and compensation and, therefore, it cannot be said that the Highway Department valued the property at the time of the taking upon the appraisals made by the expert witnesses it produced at the time of the trial.
It is the opinion of this Court that insofar as the fair market value of the property actually taken is concerned, the judgment of the Trial Court so far as it awards the sum of $100,000.00 plus an additional $1000.00 for the value of the improvements, or a total of $101,000.00 should be affirmed.
The next issue with which we are concerned is the question of severance damage. The Trial Judge denied any recovery to the defendants with regard to severance damage and stated his position as follows:
“Now, the next question for the Court to determine is the question of severance damages. Mr. Kermit Williams used three sales on service roads to determine the amount of damages. He had concluded previously that the property was worth some $25000.00 per acre before the taking, and in order to show the effect the taking had on the value of the property that was left remaining, he chose three sales of property on a service road directly opposite from the property expropriated. The property expropriated was located in the northeast quadrant and the sales he used to determine value were located in the southeast quadrant. They were Lamar to T.S.C. Motor Lines that indicated an acreage value of $9000.00 per acre, T.S.C. to Airline-Plank Realty, which indicated «an acreage value of $11500.00 per acre, and Lamar to Airline-Plank Realty, which indicated an acreage value of $20,000.00 per acre. Mr. Gully used the same three sales and they both stated that the indicated acreage value of property on these service roads was $11,500.00 per acre. This was a more or less average of the three sales. Mr. Williams had determined on an acreage basis and the value of the remainder on the service road was $147,660.00, and that figure was arrived at by him taking into account that there were 12.84 acres left remaining and by multiplying this figure by $11,500.00 per acre he obtained $147,660.00. He subtracted that figure from the value of the whole property before the taking and came out with an estimate of damage to the remaining land in the sum of $147,540.00. This was on an acreage basis. Mr. Gully had considered that the property was worth $27,500.00 per acre on an acreage basis and that, if he took the average price paid for property as indicated by those three sales at the rate of $13,500.00 per acre, that it indicated to him that the property had lost at least 50% of its value as compared to other comparables not on a service road. However, after some adjustment based on his opinion, he finally concluded that the property was damaged by some 40% of the original value and on an acreage basis determined that it was damaged by $119,912.00.
“The plaintiff has criticized the use of one of these sales and that was the sale of property by Lamar to T.S.C. Motor Lines for $9,000.00. The Court believes that this sale should not have been used because six months later the same property was sold to Airline-Plank Realty for $11,500.00, and it seems that that would be a better indication of its value than the first sale since it was a sale of the same property. The Court further is of the opinion that the market value of the property would not be reflected by any one or two sales in the service road area, but by all sales in the service road area. The property, whether in the southeast quadrant, southwest *507 quadrant or northeast quadrant, and located on the service road has the same economic influence. . It has the same disadvantages, so to speak, with regard to access. The defendants claim that the service road in the southwest quadrant doesn’t have the same economic development as the one in the southeast quadrant. However, it has the same economic development as the property located in the northeast quadrant, which was the property expropriated until the landowners in the northeast quadrant placed the Gibson Discount Store on there plus six or seven other stores. The State has complained that the service road in the southeast quadrant is not as good a service road as the service road in the northeast quadrant, and therefore, property in the northeast quadrant is more valuable. There is no way to get into the service road in the southeast quadrant except from the Plank Road and you have to know where to go to get there and, of course, I can say the same thing is true of the service road in the northeast quadrant, because the only way the Court knows how to get there from the Plank Road is to turn in on Sumrall Street. However, since there is not that much difference between the properties on the service road, to be fair all of the sales of property on the service roads should be utilized and that is what the Court has done. The Court figures if there is any difference in adjustment to be made, either by virtue of front foot or acreage, size, location or otherwise, that these factors have been taken into consideration by the market as reflected in at least four sales in this particular area. Let me say, that the sales that the Court is using are the sales of T.S.C. to Airline-Plank Realty, Lamar to Airline-Plank Realty, Parker to Thomas, and Kirby to East. The Kirby to East was $25,000.00 plus per acre; Parker to Thomas was $45,-902.00 per acre; the T.S.C. to Airline-Plank Realty was roughly $11,500.00 per acre, and Lamar to Airline was roughly $20,000.00 per acre, and if you take the average of those, that indicates a value of $26,000.00 per acre. This being so, the market seems to reflect there is no damage to the property as the result of its location on a service road, and particularly, in view of the Court’s finding that the value of property located on the Airline and the Plank Road before the taking was $25,000.00 per acre. The Court has, in its opinion, used the market value of the property as reflected in all of the sales on the service road, the Court being unable to intellectually determine that one sale was any better than another for the purpose of determining value. Suffice it to say, that the Court feels confident that at least the value of $25,000.00 per acre for the land was shown before the taking and $26,000.00 per acre for the land after the taking, and has been consistent in using the same method to determine what the value of the property is on the service road by utilizing all of the sales.
“ * * * Further, the mere fact, as stated in the opinion that was furnished to the Court of the State of Louisiana versus Sumrall that the property is located on a service road rather than the main traffic artery is not in itself compensable. I would not have followed that rule exactly if it were shown to me by all of the sales on this service road that that property was not worth but $10,000.00 per acre or something less after the taking. It seems that because of the limited access to property on a service road, that the value of the land should have diminished, however, it did not in this particular case. Now, had these sales on that service road been less and the value of them been ten or fifteen thousand dollars under what property sold for prior to the time that it was *508 located on the service road, I could have then said, well absolutely this lack of access to its location on the service road reflected a diminution in value, but the evidence is that it has not, and that is taking into consideration all the sales.”
Despite the lengthy argument set forth by defendants in this Brief and the many cases cited, we do not feel that the Trial Judge was in error in his holding regarding severance damages. While we have no particular quarrel with the holdings in the many cases cited by landowners, it should be pointed out that each expropriation case must stand on its own facts and certainly the facts in this case do not indicate that the value of the remaining property was diminished by the expropriation. All of the defendants’ witnesses maintained that the best use for the land is a shopping center. It is being used for a shopping center. While it is true the defendants introduced evidence to the effect that the shopping center located on the property is not the best of shopping centers, including the testimony of a representative of National Food Stores and uncontradicted testimony by Mr. Marvin, and to the effect that the property could have been better developed had there not been the taking, the fact remains that they all agreed that the best and highest use for the property was a shopping center, the property is being used for its best and highest use, the defendants are receiving substantial rent from the property, and all of the testimony to the effect that it is not a first rate shopping center and could have been a first rate shopping center had there not been the taking is mere speculation and certainly was not proved. This Court has repeatedly held that severance damages must be certain and positive as distinguished from uncertain, indefinite, speculative, remote or conjectural. Certainly the defendants have not met the test set forth in LSA-R.S. 48:453:
“Damage to the remainder of the property is determined as of the date of the trial.
“In either case the defendant has the burden of proving his claim.”
For the above and foregoing reasons the judgment of the Trial Court in its entirety, including the fixing of the witnesses’ fees, is affirmed.
Affirmed.