In the Matter of the Application of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property Required for the Widening of Fourth Avenue in the Borough of Manhattan.

PARLEX HOLDING CORPORATION, Appellant.

(Argued October 23, 1930; decided November 18, 1930.)

*Martin Conboy, David Asch* and *Charles W. Tooke* for appellant. An owner in condemnation proceedings is entitled to the actual value of the property actually taken by the condemnation. (*Matter of City of New York,* 190 N. Y. 350.) The value of the land taken may not be diminished by the benefits accruing to the land not taken. Such benefits must be assessed upon the remaining land which is the object of the benefits. The court committed error in deducting from the value of the Park avenue lots the value of the benefits accruing to the remaining property from the taking. (*Matter of City of New York,* 190 N. Y. 350; *Genet v. City of Brooklyn,* 99 N. Y. 296; *Matter of Forty-eighth Street,* 19 App. Div. 602.) The rule that, in estimating the value of the property actually taken, the part taken is to be considered as a portion of the whole tract, cannot be applied so as to diminish the amount which the claimant would receive were he the owner only of the portion taken. (*Genet v. City of Brooklyn,* 99 N. Y. 296; *Matter of City of N. Y.,* 198 N. Y. 84; *Matter of City of N. Y.,* 213 App. Div. 187; *Matter of Bronx Parkway,* 192 App. Div. 412; 230 N. Y. 607; *Matter of Prospect Park & C. I. R. R.,* 13 Hun, 345.)

*Arthur J. W. Hilly, Corporation Counsel (Joel J. Squier* of counsel), for respondent. The award represents the actual value of the property actually taken. (*Matter of Commissioners of Central Park,* 4 Lans. 467; *Leeds* v. *New York Telephone Co.,* 79 App. Div. 121; *Newton* v. *Hunt,* 134 App. Div. 325.) The determination of appellant's compensation on the basis of its actual ownership of the entire block does not involve the setting off of benefits to appellant's remaining land against the damage caused by the taking, but is a determination that appellant does not suffer damage in excess of the amount of the

award. (*Matter of City of New York*, 190 N. Y. 350; 2 Nichols on Eminent Domain, 723; *Lehigh Valley Coal Co.* v. *Chicago*, 26 Fed. Rep. 415; *Stevens* v. *N. Y. E. R. R. Co.*, 130 N. Y. 95; *Washburn* v. *M. L. & W. R. Co.*, 59 Wis. 364; *People ex rel. City of New York* v. *Hennessy*, 157 App. Div. 786; *Matter of Utica R. R. Co.*, 56 Barb. 456; *Matter of Prospect Park & C. I. R. R.*, 13 Hun, 345; *Matter of City of New York*, 174 N. Y. 26; *Gillender* v. *City of New York*, 127 App. Div. 612; *Lahr* v. *Metropolitan Elevated Ry. Co.*, 104 N. Y. 268; *People* v. *City of Brooklyn*, 4 N. Y. 419.) The award is full and adequate compensation for all the damage. (*Matter of City of New York [Inwood Hill Park]*, 197 App. Div. 431; *Matter of City of New York [East 63d Street School]*, 191 App. Div. 892; *Matter of New York*, 219 App. Div. 382; *Matter of City of New York, [East 36th Street]*, 168 App. Div. 463; 217 N. Y. 621; *Matter of Cassel*, 178 App. Div. 687; *Matter of City of New York*, 198 N. Y. 84; *Matter of Grade Crossing Commrs.*, 52 App. Div. 122; 164 N. Y. 575; *Matter of City of New York [Croton Dam Reservoir]*, 129 App. Div. 707; *Matter of City of New York*, 129 App. Div. 711; *Matter of Simmons*, 138 App. Div. 667; *Matter of Manhattan Ry. Co.* v. *Comstock*, 74 App. Div. 341; *Matter of Brook Avenue*, 8 App. Div. 294; *Matter of Boston Road*, 27 Hun, 409; *Matter of City of New York [Thayer Street]*, 138 App. Div. 252.)

CRANE, J.   When this case was here before (247 N. Y. 569), we affirmed the Appellate Division in holding that it was an improper method of valuation to consider the Park avenue lots as 100-foot lots shortened to 80 feet by the widening of the street. The case is here after a rehearing, the appellant again insisting that an erroneous measure of damage has been applied. The value of property taken in condemnation proceedings is a question of fact which this court cannot review unless some error of law has been committed.

To understand the contention of counsel, it is necessary to state the facts. The city of New York acquired a fee in trust for street purposes of a twenty-foot strip of land on the east side of Fourth (Park) avenue, running from East Thirty-second street to East Thirty-third street, borough of Manhattan, for the purpose of widening the street. Title vested in the city July 16, 1924. The borough of Manhattan was to pay seventy-five per cent of the cost and expense of the improvement, the other twenty-five per cent being assessed on the land benefited according to a fixed area of assessment. The strip taken measured 20 feet in width by 197.5 feet in length along the avenue. The Parlex Holding Corporation was the owner of the entire block bounded on the west by Park avenue, on the east by Lexington avenue, on the south by East Thirty-second street, and on the north by East Thirty-third street. The property was vacant, one parcel of land covering an entire block, owned by one corporation. By this proceeding, this rectangular piece of property had twenty feet taken off the Park avenue side for its full width, 197.5 feet. The remaining portion would still and does now front on Park avenue, as widened. The nature of the property adjoining Park avenue, both before and after the widening, was not changed;· the vacant lot merely had a wider street in front of it on the Park avenue side. If for sale or building purposes the owner desired to plot his front lots into parcels 25 by 100 feet, he could do so as well after as before the taking. That is, if on paper he had plotted out the block so· as to give lots on Park avenue 25 by 100 feet in depth,· he could do the same thing after the widening of the street by merely changing his rear lot lines as they appeared on the drawing. There was nothing physical upon the property itself which indicated any lot divisions. The plotting was merely artificial, or diagramatical. Should the owner consider lots on Park avenue of more value than those on Lexington avenue, he could still make the former

one hundred feet in depth, although it might result in shortening by twenty feet the lots on Lexington avenue, which were of course of less value. His actual damage, therefore, if he desired so to plot his property, would be the decrease in value of the entire block. Figure it any way we will, the actual fact remains that the owner, after the taking, could have, if he desired, the same full lots 25 by 100 feet with the same advantages on Park avenue after as before the taking.

How, then, should this strip of land taken by the city be valued? By finding the difference between the fair market value of the whole before the taking, and the fair market value of what remains. This is the general measure of damage for property situated and conditioned as the block here in question. (*Matter of City of New York [Westchester Avenue]*, 126 App. Div. 839; Nichols on Eminent Domain, vol. 2 [2d ed.], p. 723; *Washburn* v. *M. & L. W. R. R. Co.*, 59 Wis. 364, 375; *Lehigh Valley Coal Co.* v. *City of Chicago*, 26 Fed. Rep. 415; *Matter of Prospect Park & Coney Island R. R. Co.*, 13 Hun, 345, 347.)

On the previous appeal we intimated by the affirmance of the Appellate Division that this was the rule to be applied in this case, as it had been so stated or suggested in the opinion of that court. In fact, I do not understand on this appeal the appellant to claim that this is not the proper rule. The challenge is not to the rule of law, as thus stated and applied, but to the conclusion, which counsel says must be drawn from certain evidence and findings of fact made by the trial judge.

The error on the previous appeal had consisted in the trial court considering the front lots on Park avenue 25 by 100 feet as stationary at those measurements the same as if fenced off or built upon; viewed, in other words, as if the owner possessed no other land to the rear of it. Taking this as a premise, the conclusion was natural that by the taking of the twenty-foot strip, the lot remaining

would be only eighty feet deep, a circumstance very materially affecting the damage which in condemnation proceedings should be paid the owner for the parcel taken. We held that this was an improper measure of damage, and, as above stated, the case went back for a rehearing before NATHAN BIJUR, a very able Supreme Court justice. The evidence introduced before him proved the value of the entire block or plot of land owned by the petitioner before and after the taking, and the difference was the damage awarded by the justice. The method of arriving at these values, together with the memorandum of the judge stating how he, following the experts, found the values of the entire block has, I fear, led to some confusion.

In determining the value of an entire piece of vacant property it may be divided up in many ways, and in different shaped lots according to the whims of the owner or the most advantageous way to produce the highest price. The experts, as well as the judge, may have many different methods in arriving at the same point or at the value of the whole. These considerations are mere matters of evidence to prove facts. As long as competent evidence is received, and none excluded, no rule of law is violated, if the main purpose is served of ascertaining the value of the whole before and after the severance of the strip taken. An examination of the evidence will illustrate what has just been stated.

Maurice S. Cass, for the claimant, stated the value before taking to be $2,499,750; the value after taking, as $2,056,239, and the difference, $443,511, as the value of the strip taken. John W. Hotaling found the difference by the same method to be $443,511. Henry Brady, the city expert, found the value as a whole to be $1,882,000, and the remainder after the severance as $1,793,308, leaving a difference of $88,692. Edward A. Arnold, the other expert for the city, stated the difference to be $87,476.50. The trial judge made an award of $106,091.76 principal, and $30,536.74 interest, or a total award of $136,628.50. This was on February 20, 1907.

On cross-examination the two city experts explained the manner in which they arrived at their total valuations. They divided the entire block into imaginary city lots, eight on Park avenue, 25 by 100 feet or thereabouts, nine on each of the streets, East Thirty-second and Thirty-third streets, and lots of about the same dimensions on Lexington avenue. To these lots they gave various values, according to situation, added a certain per cent for corner lots and key lots, and the total thus found was the value of the entire block. Dividing the value by the number of square feet in the entire lot, the unit value of a square foot was obtained. Multiplying the number of square feet in the lot that was left after the taking of the twenty feet, gave the value of this remainder. The difference between the two valuations thus obtained gave the value of the twenty-foot strip that was taken. The same result and figure would have been arrived at by multiplying the 3,950 square feet in the strip taken by the unit square foot value. There was nothing erroneous or illegal in the method adopted by these experts in arriving at their values according to theoretical lot valuations. Whatever the method, the result was the valuation of the entire block before and after the taking.

Mr. Brady, however, in his testimony, stated that his valuation would be different if he were considering a Park avenue lot 25 by 100 feet in a single ownership, that is, owned by one who had no other property in the block. The question put to him by the able counsel for the appellants was this:

" Q. Suppose the owner owned nothing more in that block than the lots on Park Avenue, what would you have said was the value of the twenty feet taken? A. $142,200.

" Q. That is, you figured that the twenty feet on the front of these lots that were taken were worth just twenty per cent of the value of the entire lots? A. Yes, sir."

It must be noted, as stated above, that there is a

difference between a lot 25 by 100 feet which is reduced to eighty feet because the owner owns no property in the rear, and a lot which is merely symbolical or figurative, and which may remain 25 by 100 feet because the owner can merely shove back the rear paper line twenty feet when the front of the lot is shortened to that extent. Counsel for the appellant claims that upon the undisputed evidence the petitioner should have this value of $142,200 instead of $106,091.76 found by the trial court. In other words, he insists upon the same measure as was erroneously adopted by the justice on the first trial, for that is what this testimony amounts to — one-fifth of the value of the lot which after the taking is left at eighty feet, because the owner has nothing in the rear. Such is not the situation here; the owner has the entire block, and after the taking still has, if he so desires, eight lots on Park avenue 25 by 100 feet with all the easements that previously existed in that street.

With this evidence before us, we gather the meaning of the trial justice when he wrote that " After viewing the property I have valued all of the plot except the eight lots fronting on Park Avenue at $1,094,000. I find the basic value of an inside lot on Fourth Avenue, 25x 100 feet, to be $105,000. The value of this frontage may be calculated on that basis and added to the valuation of the remainder of the block. After determining the value per square foot of the entire block, the value of the portion taken must be figured on that basis. Submit tentative decree accordingly." It is conceded that according to this figuring the value of the part taken was found to be and is so stated in the decree $106,091.76. The method adopted by the judge in arriving at the total valuation is that of the experts. Both found the total value before and after by the unit measure of a square foot. This unit measure, as above stated, was determined by valuing the lots into which the property might be divided. The value of these lots

the judge states at a different figure from that given by the experts. This is his finding of fact which we cannot disturb. He viewed the property and may have considered the one too high and the other too low. He determined that all of the block with the exception of the Park avenue side was worth $1,094,000. To this was to be added the valuation of the Park avenue lots. The total was to be divided by the number of square feet in the entire block, which would give the unit value of the square foot, according to the judge's findings. Thus the value of the strip taken, according to its square foot area, was determined. It is the same thing as finding the difference between the value at the square foot unit of the entire property before and after the taking.

We can find no error of law in these rulings of the Special Term, and, therefore, the order should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Order affirmed.