Mabviit R. Dye, J.
Pursuant to authority contained in chapter 677 of the Laws of 1928, the State has appropriated certain premises belonging to the claimant in connection with the elimination of the grade crossings on the Long Island Rail Road from Far Rockaway Park to Far Rockaway.
The premises from which the appropriated lands were taken are situate in the Borough of Queens, City and State of New York, and front 87 feet on the northeasterly side of Mott Avenue, and extend easterly along Redfern Avenue a distance of 371.90 feet. The rear line is approximately parallel to the front line, and extends to the northerly right of way line of the railroad a distance of 86.45 feet. The southerly boundary of the premises coincides with the northerly boundary line of the railroad right of way. There is a curve at this point which cuts into the premises so that the width at the central portion was somewhat narrower than at the front and rear. Altogether, the parcel had an area of 26,656 square feet. The portion appropriated comprised 4,725 square feet, and was an irregular shaped piece lying next to the railroad right of way. The boundary of the appropriated parcel commenced at a point in the railroad right of way about 100.32 feet from Mott Avenue, and then cut northeasterly 85.42 feet to a point 30.99 feet from the railroad right of way; thence in a southeasterly direction for a distance of 116.25 feet to a point 23 feet from the railroad right of way; thence 61.30 feet to a point in the railroad right of way, and thence back along the right of way line to the place of beginning. This boundary forms a segment having the general appearance of a moon at the quarter, and was taken from the rear central portion of the claimant’s premises, with the result that the width *109 of the premises remaining is reduced to 37% feet at the apex of the taking, which is about 180 feet from Mott Avenue, and is of full width at the front and rear.
A dilapidated hotel structure fronting on Mott Avenue, with small street level shops, was not affected, and its valuation was accordingly excluded from consideration by the value witnesses.
Under the city ordinances, the premises fronting Mott Avenue to a depth of 100 feet were zoned “ Commercial,” and the balance ‘ ‘ Unrestricted. ’ ’
The dispute centers around the valuation before and after taking. The claimant’s valuation was based on an average overall unit of $1.50 per square foot, including plottage, which produced a value of $40,762, prior to the taking. Subsequent to the taking, the remainder was deemed worth $1.12% per square foot, leaving a difference of $15,506. When analyzed this was found to include $7,087 for direct damage, and the sum of $8,319 as consequential damage to the remainder.
The witnesses for the State arrived at their valuation by dividing the entire property into three imaginary sections. The first section included the Mott Avenue frontage to a depth of 100 feet. This was valued at $3.25 per square foot, plus 10% plottage, which made a value of $31,102.50. The second section comprised the next 100 feet in depth, and was valued at $1 per square foot, plus 10% plottage, making a value of $7,700. The third section, constituting the balance of the property, was valued at 40 cents per square foot, which made a value of $4,382.40. By this method an aggregate valuation for the entire plot, exclusive of the building, amounting to $43,184.90, was arrived at.
In fixing the value of the parcel taken, including consequential damage to the remainder, the State used the same imaginary sectional method. The first section was deemed unaffected, and was given the before taking valuation. From the second section, the 1,750 square feet appropriated from it were given the before taking value of $1 per 'square foot, plus 10% plottage, making $1,950. From the third section the 2,975 square feet appropriated were given the before taking value of 40 cents per square foot, making $1,190. To these elements of direct damage was added a consequential damage to the remainder, computed at 33%%, plus a reduction from 10% to 5% on the plottage, which amounted to $3,164.13. By this method, the State arrived at a total direct and consequential damage amounting to $6,279.13.
Notwithstanding these divergent methods of computation, the net goal reached by both parties was the difference between the value before and after the appropriation.
*110 The State urges the court to accept the imaginary sectional, rather than the over-all unit method employed by the claimant, for by so doing the damage elements would exclude the high value ‘ ‘ Commercial ’ ’ use zone of the Mott Avenue frontage, and confine it entirely to the low value “Unrestricted” use zone of the rear portion.
The claimant is equally insistent that the average for the entire plot is the only fair method by which the before and after value can be fairly arrived at. This method would spread the severance and consequential damage over the entire plot and not confine it to a selected area arrived at by an arbitrary division of the entire parcel into high, medium and low value plots.
Much emphasis has been placed on the so-called Fourth Avenue Buie of valuation. (Matter of City of New York [Fourth Ave.], 255 N. Y. 25.) To understand the contention of counsel, a review of the facts giving rise to the rule .seem appropriate. There the City of New York acquired a 20-foot strip of land on the east side of Fourth (Park) Avenue, running from E. 32nd Street to E. 33rd Street. The entire block extending through to Lexington Avenue was vacant, and in one ownership. The nature of the property, both before and after taking, was unchanged, except that the vacant lot fronted on a wider street. In computing the before and after value, the court allowed the witnesses to subdivide the entire area into plots, which were given various values according to location, the total of which was the value of the block. By dividing the number of square feet in the block, the unit value of a square foot measure was obtained, and by multiplication the value of the remainder was obtained, the difference being the value of the strip acquired, which, in effect, was giving it the unit value of the whole. The trial court found a value based on the unit measure of a square foot by fixing the value of the block without the imaginary lots fronting on Park Avenue; then added the valuation of the Park Avenue lots, dividing the total by the square feet in the entire block to arrive at a square foot unit value. This was sustained by the appellate court as it was in effect “ the same thing as finding the difference between the value at the square foot unit of the entire property before and after taking” (p. 33). Crane, J., summed up the rule by stating (p. 30): “In determining the value of an entire piece of vacant property it may be divided up in many ways, and in different shaped lots according to the whims of the owner or the most advantageous way to produce the highest price. The experts, as well as the judge, may have many different methods of arriving at the same point *111 or at the value of the whole. These considerations are mere matters of evidence to prove facts. As long as competent evidence is received, and none excluded, no rule or law is violated, if the main purpose is served of ascertaining the value of the whole before and after the severance of the strip taken. ’ ’
While the court thus gave approval to a mathematical formula to arrive at a unit value, it did so only for the purpose of arriving at the fair and reasonable difference in market value before and after the talcing.
A view of the premises in the instant claim confirms the conclusion that the value of the part taken and the damage to the remainder should be computed on the average or unit value of the whole, rather than on the value of an imaginary section. What we are after is just compensation for the part actually taken and the resultant damage to the remainder. This we believe has been accomplished herein by a fair and reasonable standard which in no way perverts or conflicts with the Fourth Avenue rule.
The remaining question is whether the claimant should have an allowance for the fair rental value of the appropriated parcel between April 15, 1941, the date of entry by the State, and February 10, 1942, the date of personal service of the appropriation notice and map, or be limited to legal interest for this period.
Chapter 677 of the Laws of 1928 provide that the service of the notice of appropriation and map on the owner fixes the date of appropriation. Prior to that time the State may amend the map, change the project, or supersede it altogether, without any liability for the fee value. When this happens, the claimant has for his remedy those damages incident to the temporary occupation. This gives rise to the proposition that where the occupancy and appropriation are not simultaneous, the claimant has two causes of action if he can show that the parcel taken is rentable at a rate fairly and reasonably greater than legal interest, which ordinarily is the measure of damages, in the absence of evidence to the contrary. (Matter of City of New York, Bronx River Parkway, 284 N. Y. 48.)
The within claimants have offered competent testimony showing that the premises, while vacant at the time, were rentable at a rate per annum of approximately 9% to 10% of its value, and, there being on proof to the contrary, we have computed and allowed an item of damage for rent during the period of occupancy aforesaid.