Fred J. Munder, J.
This is a continuation of a condemnation proceeding instituted by County of Suffolk pursuant to chapter 190 of the Laws of 1927, as amended, for the purpose of acquiring interests in certain real properties needed for the construction of drainage facilities for Old Riverhead Road (C. R. 31) and Mill Road (C. R. 100) in the Town of Southampton, Suffolk County, New York.
The subject parcel with which we are now concerned is a strip of land 17.25 feet in width, commencing at the southwest corner of the intersection of Oak Street (also known as Old Riverhead Road) and Montauk Highway and running south some 340 feet along the then existing westerly boundary of Oak Street for a total area of about 5,860 square feet, as shown on Map. No. 30 of the acquisition maps in this proceeding, the fee title to which was acquired by the county on October 1, 1964. It includes at its northerly end an additional spur which extends another 20 feet to the west along the southerly line of Montauk Highway. *40 The subject parcel bad been part of a single, irregular tract of laud, approximating one and one-quarter acres, owned by the claimant Baymond J. Ohaplic. It extended 340 feet along Oak Street then west 210 feet along the Montauk Highway to Lilac Boad and then south some 100 feet. Located thereon are five buildings. One of these, in which the claimant conducts a restaurant and bar, lies at the corner of Montauk Highway and Oak Street very close to the taking area. The property is within the incorporated Village of Westhampton Beach and is subject to the latter’s Zoning Ordinance. The tract is zoned “ District B ” for business along Montauk Highway to a depth of 300 feet. The area south of that on the same block which fronts on Oak Street is zoned “ District B-6 ”, or residential.
No issue has been raised as to the propriety of, or the necessity for, the taking of the damage parcel. A statutory inspection of the premises has been made, and it remains only for the court to determine the amount of compensation to which the claimant is justly entitled. Concededly the highest and best use for which that part of the property most nearly affected by the taking is adapted is its present use.
In arriving at an evaluation of the direct damage caused to the claimant as a result of the taking, the claimant’s appraiser considered only that part of the land which is designated on a map entitled “ Map of Easterly Section of Lilac Farm Map No. 858 ” as Lots 1 through 17. To Lots 1 through 5 fronting on Montauk Highway he gave a value of $200 a front foot. On Lots 6 through 15 fronting on Oak Street for a distance of 200 feet he set a value of $150 a front foot. The remaining Lots, 16 and 17, facing Oak Street in the residentially zoned area, were valued at $35 a front foot. Dividing the estimated total value of all these lots by the number of square feet contained therein, he reached an over-all average valuation for the entire area of $1.15 per square foot. Applying this to the damage parcel he arrived at a figure of $6,864 for the value of the land taken, to which he added $1,170 for damage to land improvements, such as paving, landscaping and floodlighting, along the Oak Street side of the property. This method of valuation of the land is patently unsound as the three parts of the whole are obviously incomparable. (See Latham Holding Co. v. State of New York, 16 N Y 2d 41.)
The appraisers for the county, in evaluating the direct damages sustained as a result of the condemnation, took into account the estimated value of the entire tract of land owned by the claimant, which included a parcel at the southeast corner of Montauk Highway and Lilac Boad. They divided the property *41 for the purposes of valuation into three parcels: Parcel No. 1 to include all the lots fronting on Montauk Highway from Oak Street to Lilac Street and Lot No. 6 which fronts on Oak Street ; Parcel No. 2 to include Lots 7 through 15 fronting on Oak Street; and Parcel No. 3 to include Lots 16 and 17 which fall in the “ District R-6 ” zone area. Basing their evaluations on the same comparable sales used in a prior phase of this proceeding involving the corner lot directly to the east (see Map No. 31), but taking into account that it includes in one ownership frontages on Lilac Street as well as Montauk Highway and Oak Street, one of petitioner’s appraisers ascribed to Parcel No. 1 a front-foot value on Montauk Highway of $225, and the other, a value of $250 a front foot. To Parcel No. 2, which has a 180-foot frontage on Oak Street, they ascribed front-foot values of $100 and $110 respectively; and to Parcel No. 3 consisting of Lots 16 and 17 both gave a front-foot value of $25. Assigning separate per square-foot values to each parcel, the two county appraisers’ total damage figures for the land area taken came to $5,700 and $6,200, respectively. To these amounts each added an arbitrary figure of $500 for damage to land improvements, which was based solely on what is discernible from the damage map, neither having viewed the premises prior to the taking.
In order to determine the just compensation to which the claimant is entitled the court does not make an independent appraisal, but relies on the evidence presented to it. Since the claimant’s appraiser employed an erroneous method of evaluating the land actually taken, the court must necessarily depend on the evidence thereon submitted by the petitioner. After a consideration of this evidence I find that the fair and reasonable market value of that portion of the land actually condemned is $6,200. To this amount must be added the claimant’s estimate of $1,170 for the damage to land improvements, since the figure awarded by the county’s appraisers was not predicated on actual knowledge of what existed prior to the taking.
Another element of damage here claimed is that occasioned by the fact that the taking along Oak Street has reduced the side-yard width alongside the claimant’s restaurant building to some 5 feet, while the village Zoning Ordinance requires a 10-foot setback on Oak Street. The maintenance by the claimant of the building in its present location is consequently in technical violation of the ordinance.
Boih sides have referred to this situation as one resulting in a “non-conforming use”; but that term is applied only to a structure or use existing at the time of the adoption of a zoning ordinance that does not conform to the new restrictive regula *42 tions and which hence is permitted to be continued. The subsequent creation of a nonconformance is not permitted. ‘ ‘ In other words, a party cannot by erection of buildings or other acts in violation of a zoning restriction establish a legal right to a nonconforming use. Stating the rule somewhat more broadly, ‘ nonconforming ’ uses commenced subsequent to a zoning regulation or restriction are not entitled to protection under ordinances, statutes or constitution ”. (8 McQuillin, Municipal Corporations [3d ed.], § 25.186. See, also, Anderson, Zoning Law and Practice in New York State, § 6.08; 2 Yokley, Zoning Law and Practice [3d ed.], § 16-2.)
Here the question is whether the owner, whose land was reduced in size by a taking for a public use by the county through an eminent domain proceeding and through no voluntary action on his part, has sustained any compensable damage by reason of the creation of the resultant noncompliance with the village zoning regulation. While a municipality may not be subject to zoning restrictions of its own or those of another municipality in the performance of its governmental activities (Nehrbas v. Incorporated Vil. of Lloyd Harbor, 2 N Y 2d 190), it has no power to extend its immunity to a landowner from whom it takes a conforming side-yard area for highway purposes.
The question presented, i.e., whether the owner who now finds himself in violation of the Zoning Ordinance may be compelled by the village to comply with the area restrictions, I think must be answered in the affirmative. That being so and the condition being one that was created by the county, the county should be made to compensate the owner for the cost of restoring the premises to a condition that is in compliance with the zoning regulations if that can be done. (See 18 Am. Jur., Eminent Domain, § 269.)
One way to do it, of course, would be to move the building to conform with the side-yard requirement and this is the method proposed by the claimant. To his computation of direct damages the claimant’s appraiser has added the sum of $6,773 as the estimated cost of such removal of the building.
A general rule of damages, however, requires a claimant to minimize his damages. (4 Nichols, Eminent Domain [3d ed.], p. 520, § 14.22.) This suggests that our claimant should seek by other means to legalize the present use. The most obvious and least costly medium would be an application for an area variance. Under the special circumstances of the instant case it is rather unlikely that the village would deny such an application. The acquisition by the county having been for the installation of underground drainage facilities it would appear that the purpose *43 of the setback restriction of prohibiting overground building on the land which was taken has been achieved. A reduction of the setback requirement to the distance now separating the building from the taking line by means.of a variance, if not by an amendment of the ordinance, would provide a just and reasonable solution of the problem thus created. Just as the reasonable probability of obtaining such a variance is a proper element to consider in determining the market value of land taken (cf. Matter of School Dist. No. 13 of Town of Huntington v. Wicks, 227 N. Y. S. 2d 768; Cook v. Pieper, 34 Misc 2d 532), so it may also be considered in fixing the amount of other compensable damages resulting from the taking.
I therefore conclude that the claimant, in addition to direct damages of $7,370 for land and improvements taken, is entitled to severance damages in an amount to be hereafter determined to be sufficient to compensate him for the expenses, including reasonable counsel fees, of obtaining a variance, on condition that he makes application for same without delay and proceeds with reasonable diligence. Pending the decision on such application this proceeding will be continued and a further hearing on the issue of severance damages will be held thereafter.
As a further item of severance damage the owner claims the loss of parking facilities in the front of his restaurant building. It appears that, prior to the taking and the installation by the county of a 10-inch curb around the corner of the intersection, it had been possible to park two to three automobiles in front of the building. Those automobiles, however, rested only partially on the claimant’s property and the damage, if any, is inconsequential and will be disregarded.
In the event that the claimant shall fail to apply for a zoning variance on or before October 22,1965, his claim for such severance damages will be considered to be abandoned and therefore denied.