424 P.2d 192

DEER VALLEY INDUSTRIAL PARK DEVELOPMENT AND LEASE COMPANY, an Arizona corporation, Thomas G. Boskon and Helen Boskon, his wife, Appellants,

v.

STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellee.

No. 2 CA–CIV 267.

Court of Appeals of Arizona.

Feb. 24, 1967.

Rehearing Denied March 22, 1967.

Review Denied May 9, 1967.

Dunseath, Stubbs & Burch, by Robert C. Stubbs, Tucson, for appellants.

Darrell F. Smith, Atty. Gen., Stanley Z. Goodfarb, Sp. Asst. Atty. Gen., Phoenix, for appellee.

MOLLOY, Judge.

This is an appeal by the property owners from a judgment rendered in their favor in a condemnation action. The property involved in the "before" situation was a quarter section of land through which an existing highway (US Highway 60, 70 and 89) passed diagonally in a southeast-northwest direction. In this condemnation action the right-of-way was widened to a full 300-foot width, in order to permit a divided highway with two separate strips of pavement. Previously there had been a single strip of pavement carrying traffic in both directions.

In order to gain the full 300-foot right-of-way, it was necessary to condemn a strip of land along the southwest border of the highway 50-foot in width and approximately one-half mile in length. On the northeast border of the highway, a strip varying in width from 100 to 150 feet was

condemned for the approximate one-half mile distance. The total property actually taken was 11.7 acres and it is over the value placed upon this acreage that the points of dispute in this case arise.

In the "after" situation, access to the new highway was not to be controlled, so that the remaining land of the property owners had frontage on the new highway for substantially the same length on each side as in the "before" situation.

There is no evidence in the record that the strips of land condemned were of any greater value than the remaining acreage, except for such special value as they might have by reason of their frontage on the interstate highway in question. Both of the appraisers testifying for the property owners gave special value to these strips by reason of their proximity to the highway. In their opinion, land fronting along this highway in the "before" situation, with a depth of 400 feet, had a value of $60 per front foot. This would place a value on the front 400 feet of approximately $6600 per acre, but the property owners' appraisers valued this frontage at $8500 per acre because in their opinion the front part of this 400 feet had greater worth than the rear. From this computation, they arrived at the value of $112,030 for the part taken.

With two exceptions, all comparable sales used by the property owners' appraisers were tracts of land considerably smaller than 160 acres in size. One exception was an 80 acre parcel bisected diagonally by the same highway and lying approximately two miles northwest of the subject property, which was sold for a price of $1,000 per acre. The other exception was a sale of 200 acres of land at Florence Junction, which land had frontage at this intersection of major highways. This latter sale was for a gross price of $1,600 per acre. The remaining comparables used by the property owners' appraisers ranged from 7.1 acres in size to 2.01 acres and the sales prices from $10,890 an acre to $6,250 per acre. Each of these parcels had frontage on the highway in question, and in each

case the property sold had considerably less depth than the subject property.

The only other evidence as to the value of the property taken came from the state's appraiser, who used as comparables the sales of tracts of land with frontage on the subject highway, ranging in size from 640 acres down to 80 acres, and with sales prices varying from a high of $1,600 per acre to a low of $353.13 per acre.

The state's appraiser gave an overall valuation to the subject property of $1,000 per acre and appraised the land taken at the same price, without any allowance for frontage value. This value of $11,700 was accepted by the jury as being the value of the land taken. In addition the jury found severance damages of $8,500 as to which there is no dispute on appeal.

The state's appraiser admitted on cross-examination that smaller parcels of land usually sold for more money than larger tracts. He opined, however, that the subject property should be considered as a whole and that the strip of land in question had no special value above the average of the whole.

After judgment on the jury verdict, the property owners moved for a new trial contending that the verdict of the jury was not supported by substantial evidence. Their contention was based upon the premise that the property taken should have been appraised, not as part of the whole, but as a separate smaller tract of land as to which the only true comparable sales were the smaller ones testified to by the property owners' appraisers. It is their view that there was no substantial basis for attributing to the strip of land in question the average value of the entire tract owned by the property owners, and that therefore, as a matter of law, there is no basis for the jury's verdict.

The state's first response to this contention is that it was not raised until after he case had been tried and submitted to a jury on instructions, given without objection, that the jury could find the value of the parcel taken to be an amount " * * *

anywhere between the highest and the lowest estimates which may be arrived at by using the various factors appearing in the testimony in any combination which is reasonable."

It is the general law that:

"* * * a question or objection may not be raised for the first time on a motion for a new trial, and a party may not speculate on the verdict by failing to raise a matter as to which he has knowledge and then raise it for the first time on a motion for a new trial."

66 C.J.S. New Trial § 13b, p. 104.

In our own state, we have the following pronouncement from our Supreme Court:

"Parties may not sit by and allow error *which is not fundamental* to be committed, without protesting and asking the trial court to correct the error at the time, and then later, when the judgment goes against them, ask for a new trial on that ground." (Emphasis added)

Southern Arizona Freight Lines v. Jackson, 48 Ariz. 509, 518, 63 P.2d 193, 197 (1936).

Our Supreme Court has not as yet laid forth the complete guide lines as to what may constitute "fundamental error." In Trojanovich v. Marshall, 95 Ariz. 145, 146, 388 P.2d 149, 150 (1963), our Supreme Court held that the failure to properly instruct on contributory negligence was fundamental error which would be raised by the Supreme Court for the first time on appeal, and on its own motion. In connection with this ruling the court said:

"The giving of the following instruction constituted fundamental and reversible error *in that it deprived appellant of a constitutional right*." (Emphasis added)

95 Ariz. at 146, 388 P.2d at 150.

In any condemnation action we are concerned with Article 2, Section 17, of our Constitution, A.R.S. which reads in part:

"No private property shall be taken or damaged for public or private use without just compensation having first been made, * * *."

If the contentions of the property owners here be correct, that is, if the portions of land taken have special value as frontage under applicable law, then the property owners have been seriously deprived of adequate compensation. All of the evidence in this record clearly substantiates the fact that land in the general area concerned, without highway frontage, has substantially less value than land with frontage, and that the wide difference in value between the estimates of the property owners' appraisers and that of the state's appraiser has a solid factual basis depending upon whether it is considered that "frontage" has been taken in this action.

By reason of the special nature of eminent domain proceedings, which takes property against the will of the property owner and because a constitutional right is involved, we hold that the contention of the property owners should be considered on appeal, though raised for the first time on a motion for new trial.

But though we believe the property owners' position is of such serious substance that it merits consideration, we are unable to accept it as being a valid concept.

We first examine the property owners' contention that the only true comparables for the land taken in this case are smaller tracts of land similar to the size of the parcels actually taken. In our view, this argument fails for two reasons. In the first place, there is no showing that these particular strips of land had any particular value as separate parcels. The closest that the testimony comes to any such evidence is the following:

"Q I see. Well, Mrs. Oaks, what would the property have sold for that was only fifty feet deep? That's on the south side of the highway in the before situation.

"A What would it have sold for?

"Q Yes. What would property fifty feet deep on the highway have sold for? Is there any market for property that is fifty feet deep?

"MR. KINNEY: I am going to object. It's not proper recross-examination.

"MR. GOODFARB: She just said her method is correct.

"THE COURT: She may answer.

"A *My figures are an average over-all.*

"Q Mrs. Oaks, isn't it true that the State on the south side of the highway is only taking to a depth of fifty feet?

"A That is true.

"Q What would a property to a depth of fifty feet sell for?

"A *I haven't estimated that.*

"Q You estimated a hundred and fifty feet. You estimated four hundred feet.

"A The first fifty foot would sell for more than this. The average for a fifty foot depth parcel, the average for the first fifty foot, would be more per square foot or per acre than if you averaged in the cheaper land at the rear.

"Q Mrs. Oaks, is there any market—

"A (Interposing) Get a lower figure.

"Q Is there any market for property which is only fifty feet deep along the highway like this?

"A *Not just fifty foot. But the property was not just fifty foot.*" (Emphasis added)

Thus the undisputed state of the record in this regard differentiates this case on a factual basis from several of the cases relied upon by the property owners, in which cases it was established that the property taken had value as a separate and distinct piece of property. Included in this category are: State Through Department of Highways v. Moyse, 151 So.2d 149 (La. App.1963); State Department of Highways v. Caillier, 157 So.2d 274 (La.App. 1963); People ex rel. Department of Public

Works v. Silveira, 236 Cal.App.2d 604, 46 Cal.Rptr. 260 (1965); and Territory of Hawaii, by Sharpless v. Adelmeyer, 45 Haw. 144, 363 P.2d 979 (1961).

■ However, it is our view there is a second and more fundamental reason why the approach of the property owners' appraisers in this action was not a proper one. It is abundantly clear in cases such as this that a substantial portion of the value of the property in question arises by reason of its right of access to the public road upon which it fronts. In insisting that the two parcels of land taken here should be compared to parcels of land of similar size sold in this area, it is significant that the property owners' appraisers have selected sales of smaller parcel of land which in each case included the frontage rights, which frontage rights pertained to property of substantially less depth than that of the 160 acres involved here. These smaller parcels of land presumably have been separated out of larger parcels of land and sold for their frontage value. When this is done, rights of access attaching to the rear portions of the larger parcels have been separated from their access rights to the highway, in a quid pro quo exchange, so that in effect the buyers have paid additional value for the totality of the access rights of the larger parcels of land. To compare the sale of these smaller parcels to the taking here seems to this court to be completely unrealistic and not within the contemplation of either our constitution or our statutory provisions pertaining to eminent domain.

■ In the majority of the jurisdictions, either by statute, as in Arizona,[1] or by court decision, the state must pay for the value of the property taken, regardless of the benefits to the remaining property. 1 Orgel on Valuation Under Eminent Domain (2d ed.) § 50, pp. 234–35; 4 Nichols on Eminent Domain (3d ed.) § 14.23, pp. 528–42.

■ Under this concept, courts and juries are required to fix the value of the parcel of land taken and then to determine

---

1. A.R.S. § 12–1122, subsec. A.

the value of the remaining land in its "before" condition as opposed to its "after" condition, so as to determine the two measures of damages to be awarded—that for the parcel taken and that for the severance damages. Though easy to express in words, the application of these words to the realities of the real estate market results in a breaking down of concepts, because in so attempting to separate the two portions of the property affected, appraisals are being placed on things not bought or sold as such in the market place.

Orgel, in chapter 4 of his *Valuation Under Eminent Domain* (2d ed.), discusses at length the inconsistencies inherent in considering the part taken as being a separate entity from the part remaining. Courts have attempted to escape from a "truly inescapable dilemma" (1 Orgel § 52, p. 238) by refusing to regard the part taken as a separate entity and treating the part taken as a part of a whole. The publicists in this field of our law are unanimous in indicating that this is the general rule in jurisdictions following the part-taken-plus-damage-to-the-remainder rule. Orgel expresses this as follows:

"The courts, however, have not seen fit to be logical in this respect. While often uttering the doctrine that the strip that is taken should be appraised at its 'market value' or 'fair market value,' they have nullified their own words by insisting that the strip shall nevertheless be valued as a *part* of the entire tract." 1 Orgel, Valuation Under Eminent Domain (2d ed.) § 52, pp. 237–38.

The following quotations indicate accord:

"The land taken must be valued as a portion of the tract of which it is a part and not as if it stood alone. This principle is predicated upon the obvious fact that the value of part of a tract is dependent upon its relationship to the remainder of the tract. Ordinarily this relationship gives it a greater value than the value inherent in it as a separate tract. By the same reasoning the value of the remainder is likewise enhanced by consideration of its relationship to the whole tract."

4 Nichols on Eminent Domain § 14.231, pp. 544–45.

"The overwhelming weight of authority on the question of valuing the part taken in such a case is that the part acquired is not limited in value as though it were an isolated piece, but its value is determined on the basis of an integral part of a larger area in the same ownership."

Jahr, Eminent Domain § 103, p. 139.

Both Orgel and Jahr recommend that the confusion of the jury in these matters should be clarified by an appropriate instruction stating this concept of valuation as a whole:

"A clear instruction to a jury in a partial taking case, where the jury is required to value the part taken, should consist of *first* a request to find the value of the entire property; *second,* to determine some ratio that the part acquired bears to the value of the whole property; and *third* to apply that ratio to the value of the whole property to reach a determination of the value of the part taken. After that is accomplished, the jury may then proceed to consider the severance or consequential damages to the residue under appropriate instructions."

Jahr, Eminent Domain § 103, p. 140.

1 Orgel, Valuation Under Eminent Domain (2d ed.) § 52, pp. 238–39, makes substantially the same recommendation.

■ We believe it further necessary in cases of this kind to instruct the jury that access or frontage rights upon an abutting highway pertain to the entire parcel of land and that when a front portion of abutting property is taken, the access or frontage rights have been taken only to the extent that the actual frontage on the highway might be reduced in length, either by reason of the shape of the property concerned or by other reasons inherent in the particular improvement contemplated.

■ Generally, easements appurtenant to land are appurtenant to every portion of the dominant estate:

"A right-of-way pertinent to land is appurtenant to every part of it."

2 Thompson on Real Property § 322, p. 75 (1961).

Also see 28 C.J.S. Easements § 65b, p. 732; 25 Am.Jur.2d Easements and Licenses § 96, p. 501; 3 Powell on Real Property § 419, p. 526.4.

Though decided in a jurisdiction in which a different rule of damages is followed, that of difference-in-value-before-and-after-the taking, nevertheless we believe the following language to be pertinent to the immediate problem, in that it indicates the inseparability of access rights as between the front and rear portions of property involved in a highway-widening proceeding:

" 'Frontage' value may be considered nothing more than the value that derives from convenient, direct access to the highway. The right of such access ordinarily is appurtenant to the entire tract, and so long as the tract continues under single ownership it cannot be said that the value attaches to the front portion of the tract any more than to the back. The value from the right of access can attach specifically to the front portion only by a conveyance of the right along with a conveyance of the front portion which results in destroying or lessening the access ·to the highway from the back portion. But in the ordinary highway widening situation the right of access is not taken by the condemnation and the front portion is not devoted to a use that impairs the access of the back portion— on the contrary, it is converted to a use which leaves all of the right of access attaching to the back portion. No part of the right of access is taken along with the front portion, by the condemnation, and no new right of access is created for the back portion; the formerly existing right of access simply adheres to the back por-

tion. So no 'frontage' value has been taken by the condemnation nor has the value of the remainder of the tract been enhanced by any newly created frontage rights."

Frenel v. Commonwealth Departmnet of Highways, Ky., 361 S.W.2d 280, 282 (1962).

So, in a street-widening case, if one considers the front portion taken as a separate entity, with full access rights to the street, and the rear portion as a separate entity, with full access rights to the street, we are considering nonexistent things. Hence it is no wonder that juries are presented with such variations in testimony that it is difficult to comprehend that the testifiers purport to be members of a common profession. Tremendous variations in verdicts thus result, making eminent domain litigation an attractive game of chance for those armed with the more imaginative and persuasive professional witnesses.

The view that in a street-widening case the "frontage" has no special value, as such, is supported by City of Los Angeles v. Allen, 1 Cal.2d 572, 36 P.2d 611 (1934), and In re Fourth Avenue in City of New York, 255 N.Y. 25, 173 N.E. 910 (1930); 255 N.Y. 602, 175 N.E. 331; 256 N.Y. 643, 177 N.E. 175; 229 App.Div. 757, 242 N.Y.S. 819, cert. denied 283 U.S. 860, 51 S.Ct. 653, 75 L.Ed. 1465 (1931), which latter decision should be read in connection with In re Fourth Avenue, 247 N.Y. 569, 161 N.E. 186 (1928). The *Allen* decision, supra, is rendered under statutory provisions pertaining to damages in eminent domain proceedings from which our own statute was taken.[2] The New York decisions of *In re Fourth Avenue* are rendered in a jurisdiction in which there is a constitutional right to be compensated for the parcel of land taken, regardless of benefits to the remainder. In re Water Front in City of New York, 190 N.Y. 350, 83 N.E. 299, 303, 16 L.R.A.,N.S., 335, 13 Ann.Cas. 598 (1907).

2. See historical note after A.R.S. § 12–1122, referring to West's Annotated C.C.P. § 1248.

There is substantial and very recent authority taking a contrary view to the foregoing, holding that if the parcel taken can be regarded as having separate and distinct value, the same should be valued in a condemnation proceedings as if separated from the remaining property of the condemnee, in which event the property taken is given the benefit of the entire value resulting from the frontage rights. Decisions so holding are: State v. Meyer, 403 S.W.2d 366 (Tex.1966); People ex rel. Department of Public Works v. Silveira, 236 Cal.App.2d 604, 46 Cal.Rptr. 260 (1965); and Territory of Hawaii, by Sharpless v. Adelmeyer, 45 Haw. 144, 363 P.2d 979 (1961).

These decisions must be distinguished from those holding that if, for particular reasons, the front portion of land has special value, as, for instance, if it be more level, or less marshy, or more arable than the remainder to the rear, such should be valued higher than the rear portion. Cases so holding are: In Green v. Board of Commissioners, 163 La. 117, 111 So. 619 (1927); Texas Gas Transmission Corp. v. C. M. Thibodeaux Co., 148 So.2d 337 (La.App. 1962); Commonwealth of Kentucky, Department of Highways v. Hall, 353 S.W.2d 548 (Ky.1962); In re Old Riverhead Road CR 31, 48 Misc.2d 39, 264 N.Y.S.2d 162 (1965).

With these latter decisions we have no quarrel, but we reject the reasoning and holdings of former decisions as being unrealistic, though we may accept the proposition that they have carried the rule of damage in question to its logical extreme.

Logic sometimes leads to strange destinations. There are occasions when it is well to remember the words of Justice Holmes: "The life of the law has not been logic: it has been experience." Common sense, derived from experience, leads this court to conclude that our legislature, by adopting the subject rule of damage, A.R.S. § 12–1122, subsec. A, did not intend that property owners be paid in full for valuable frontage rights, and yet at the same time retain these frontage rights.

A further contention raised in the appellants' brief regarding the inadmissibility of sales prices obtained for state lands sold at public auction was abandoned at the time of oral argument and we will therefore not pass thereon.

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.