646 P.2d 301

**CITY OF SCOTTSDALE,
Plaintiff-Appellee,**

v.

**CHURCH OF THE HOLY CROSS LUTHERAN, an Arizona corporation,
Defendant-Appellant.**

**No. 1 CA–CIV 4995.**

Court of Appeals of Arizona,
Division 1, Department B.

April 6, 1982.

Rehearing Denied May 12, 1982.

Review Denied June 15, 1982.

Richard Filler, Scottsdale City Atty. by Patrick E. Burke, Asst. City Atty., Scottsdale, for plaintiff-appellee.

Machmer, Schlosser & Meitz, Ltd. by Robert H. Schlosser and Robert E. Siesco, Jr., Phoenix, for defendant-appellant.

## OPINION

JACOBSON, Presiding Judge.

The major issue in this appeal is whether a landowner is entitled, in a condemnation proceeding, to damages based upon the thwarting of its future plans involving the remainder of its property following a partial taking.

This action was commenced by the appellee, City of Scottsdale, (City) seeking to condemn 2.765 acres belonging to appellant, Church of the Holy Cross Lutheran (Church). Following an uncontested hearing which determined that the City's taking was one of "public use and necessity" the only matter remaining to be litigated was the amount required to be paid by the City

to compensate the Church for the taking. This issue was tried to a jury.

Immediately prior to trial, the City sought by a motion *in limine* to prohibit the Church from introducing evidence as to the future anticipated use of the remaining property insofar as that evidence would form the basis of severance damages. The court granted this motion.

During trial, the Church moved to strike the testimony of the City's appraiser on the basis that it did not comply with the "economic unit" theory of appraising. This motion was denied. In addition, the trial court refused to instruct the jury on this same "economic unit" theory of appraisal. The jury found that the fair market value of the taken property was $22,120.00 and judgment was entered for the Church in this amount. Following the denial of various post-trial motions, the Church has appealed.

The Church's property before the taking consisted of 6.698 acres and was located on the west side of Hayden road just south of Osborn road in the City of Scottsdale. The west 2.765 acres of this property lies within the 100 year flood plain of Indian Bend Wash, a tributary of the Salt River. Prior to this condemnation action, the City had passed various zoning ordinances limiting improvements on property within the flood plain and use of this property was restricted to "parking and recreational use." The City, in its development of a "green belt" along the banks of Indian Bend Wash sought to condemn all property lying within the flood plain, including the 2.765 acre portion belonging to the Church (hereinafter referred to as the "subject property"). At the time this action was filed in 1974, the subject property was unimproved.

The balance of the Church's property, consisting of approximately 3.933 acres (hereinafter referred to as the "remainder" property), was improved with several buildings consisting of a fellowship hall of approximately 6,000 square feet; administration and school buildings of approximately 8,060 square feet; and the remainder of the property was utilized for parking.

At the time of trial, the sole issue as to the fair market value of the subject property was basically fought on the testimony of two appraisers: Robert L. Blake, testifying for the Church and Veldon Naylor, testifying for the City. Both of these appraisers agreed that the highest and best use of the entire property was as "church property" and that the highest and best use for the subject property was for parking.

Mr. Blake's opinion was that there existed a unity of use between the subject property and the remainder and thus the entire parcel would not constitute "separate economic units." Mr. Blake defined "separate economic units" to mean "a portion of a property that can be used in and of itself and by itself. Can be used profitably." It was Mr. Blake's theory that since the subject property and the remainder did not constitute separate economic units, different unit values could not be ascribed to them. Based upon this theory, Mr. Blake opined that the fair market value of all the property in an unimproved state was $20,000 per acre. Applying this value to the 2.765 acres of the subject property, it was Mr. Blake's opinion that the subject property had a fair market value of $55,000.

Mr. Naylor, the City's appraiser, on the other hand, was of the opinion that because a portion of the entire property was within the flood plain of Indian Bend Wash, it had a value less than the remainder property. Based upon this approach, Mr. Naylor opined that the fair market value of the subject property was $5,750 per acre or a total fair market value of $15,898.75. The Church moved to strike this testimony on the grounds that since Mr. Naylor was unable to testify that the subject property and the remainder property constituted "separate economic units," as a matter of law, this opinion testimony subscribing different values to the property was incompetent. The trial court denied this motion. In addition, the trial court refused the Church's instruction which would have required the jury to determine whether the entire property constituted a "single unit" and that "the proper method of valuing the part taken on the defendant's case is on a per

unit value if you find that there was a unity of use between the part taken from each of the defendants and their remaining property and if it is not a separate economic unit."

During trial, and in response to the granting of the City's motion *in limine*, the Church made an offer of proof concerning the future use of the remainder property. This offer showed that since 1963, the Church had planned to use a portion of the remainder property to build a sanctuary building in an area presently utilized for parking; that such a future expanded use of the remainder property would require the utilization of the subject property for parking to compensate the loss of the parking caused by the expansion; and that by reason of the taking of the subject property, these expansion plans were thwarted. Mr. Blake would have testified that due to the inability of the Church to utilize all of the property, the remainder suffered severance damages in the sum of $23,000. The trial court refused to allow this evidence to be placed before the jury.

The Church on appeal basically contends that the trial court erred in refusing to adopt its "severance damages" theory and its "economic unit" theory. We will first discuss the severance damage issue.

The Church's basic argument dealing with the admissibility of its future plans for the remainder—the contemplated building of a sanctuary—is that such evidence goes to the issue of "highest and best use" and that the highest and best use of the property is the development of the unpaved parking lot for sanctuary purposes. From this premise, the Church argues that its expert should then be allowed to testify that the thwarting of these plans resulted in severance damages to the remainder.

The problem with this analysis is that it mixes two different theories: The admissibility of future use to determine the highest and best use of the condemned property and thus establish a fair market value and the thwarting of future plans as to the remainder. The concept that the present use to which a condemned premise is being put does not necessarily determine its fair market value is aptly stated in *State v. Jay Six Cattle Co.*, 88 Ariz. 97, 102, 353 P.2d 185, 188 (1960), quoting from *County of Maricopa v. Paysnoe*, 83 Ariz. 236, 319 P.2d 995 (1957):

> A valuation which does not take into consideration the highest use would not be the fair market value and therefore would not be just compensation. * * * An owner who is making only a minor use of premises cannot be deprived of its value for a major use if that major use goes to a higher market value.

*Also see* 4 Nichols on Eminent Domain § 12.314 (3rd Ed., 1951) (Recompilation, 1978).

Here there is no dispute that the Church was making the "highest and best use" of its property—utilizing it for church purposes—or that the subject property had a use other than for parking in connection with the Church's operation. The valuation testified to by both appraisers was based upon this actual use. The offered testimony did not go to a use other than that presently contemplated by both appraisers, for example a commercial use, but rather went to an expanded utilization within the recognized highest and best use and frustration of that proposed expansion.

▮ Thus, the proper question before the court was not whether the evidence was admissible on the issue of highest and best use, but rather whether the thwarting of a contemplated use of the remainder is a proper element of severance damages. In this regard, it is important to keep in mind that where only a part of the property is taken, the measure of severance damages is the difference between the market value of the remainder before and after the taking. *Pima County v. DeConcini*, 79 Ariz. 154, 285 P.2d 609 (1955). "Market value" in this context generally means what the property would bring on the open market assuming a willing buyer and a willing seller. *City of Tucson v. El Rio Water Co.*, 101 Ariz. 49, 415 P.2d 872 (1966). Thus, market value consists of all those elements which either an owner or a prospective buyer could rea-

sonably urge as affecting the fair market price of the property. *Andrews v. Cox*, 127 Conn. 455, 17 A.2d 507 (1941).

■ However, condemnation is not concerned with special damages to the landowner arising from loss of profits or loss of future expectations concerning the property. For this reason, a loss of a particular future contemplated use by the owner is normally not admissible as an element of damages. As has been stated:

> [T]here can be no allowance for enhanced damage which an owner "would suffer by reason of being prevented from carrying out a particular scheme of improvement, existing only in contemplation at the time of the trial."

*People v. La Macchia*, 41 Cal.2d 738, 264 P.2d 15, 24 (1953).

■ However, evidence of proposed uses of the property, assuming it was reasonably contemplated, may be admissible, not to show an enhanced loss because the owner is prohibited from carrying out the particular use, but to show adaptability of use of the land for that purpose to establish a market value.

> In other words, it is not value in use, either actual or prospective, to the owner that is involved, but value in exchange—market value—that is the test.

*Daly City v. Smith*, 110 Cal.App.2d 524, 243 P.2d 46, 51 (1952).

It is clear that the state's motion *in limine* sought only to preclude testimony concerning the sanctuary plans insofar as such testimony dealt with "enhanced" or "special" damages arising from the frustration of these plans. As the motion *in limine* states:

> Plaintiff, CITY OF SCOTTSDALE, moves the Court, in limine, for an order prohibiting the introduction of evidence by defendant, or reference in any manner during the course of trial, to enhanced or special damages arising from frustration of any plans that defendant, CHURCH OF THE HOLY CROSS LUTHERAN, may have had for expansion or reconstruction of improvements on the subject

property prior to the date of valuation, October 4, 1976, in this matter.

■ Under the authority cited above, it is clear that based upon the testimony sought to be excluded for the purposes stated in the motion, the trial court properly granted this motion.

The Church on appeal, however, argues that the scope of the trial court's order granting the motion *in limine* precluded any evidence concerning a decrease in the market value of the remainder by reason of its underutilization. The City on the other hand, argues that the scope of the trial court's order was limited to the purposes stated in its motion. Unfortunately, the arguments on the motion are not included in the record on appeal.

■ However, assuming that the Church's position on the scope of the trial court's order is correct, the trial court did not err in excluding evidence concerning the underutilization of the property based upon future developments of the property. We reach this conclusion based upon the offer of proof, which included two depositions of the Church's officers—the president and a member of the finance committee.

Counsel for the Church conceded that the expansion plans in question were formulated in the early 1960's but had not been acted upon "pending such financial resources and the like ...." The Church President, when asked when the proposed construction would take place, responded that he "[didn't] know if there ever was a date." The finance committee member testified that while the proposed expansion was always considered an eventuality, there was no time table for the project.

In short, this testimony failed to present evidence from which the jury could have found that there was a reasonable probability that the Church's development plans would come to fruition within the reasonably foreseeable future. Absent such proof, evidence of plans for future development is too speculative and remote to form the basis of finding market value at the time of taking. *See* 4 Nichols on Eminent Domain,

*supra, Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); *United States ex rel. T.V.A. v. Powelson*, 138 F.2d 343 (4th Cir. 1943) (evidence must show "reasonable probability" of owner's plans being realized in the "reasonably near future"); *Dist. of Columbia v. Lot 813 in Square 568*, 232 F.Supp. 714 (D.D.C.1964): *City of Los Angeles v. Geiger*, 94 Cal. App.2d 180, 210 P.2d 717 (1949); *Dept. of Conservation v. Aspegren Fin. Corp.*, 47 Ill. App.3d 118, 5 Ill.Dec. 312, 361 N.E.2d 635 (1977).

In fact, the R.A.J.I. instruction referred to by counsel in his offer of proof encompasses the limitation that the jury must only consider future "reasonable uses to which the property may be put [in the foreseeable future."]

We therefore hold that if the trial court's order *in limine* precluded evidence going to market value based upon future use of the property, such an order was proper as the future use was too speculative to form the basis of a jury determination of market value.

We now turn to the Church's "economic unit" theory. This theory basically is that unless the part taken has an "economic" use separate and apart from the remainder, then " '[t]he land taken must be valued as a portion of the tract of which it is a part and not as if it stood alone.' " *Deer Valley Industrial Park Development & Lease Company v. State ex rel. Herman*, 5 Ariz.App. 150, 155, 424 P.2d 192, 197 (1967) quoting from A. Jahr, Eminent Domain § 103 (1953). This argument continues that in the absence of "separate economic units" the court must apply the average unit value in all situations.

While the legal principle that "the land taken must be valued as a portion of the tract of which it is a part" is a sound proposition, the conclusion that this is based upon an economic unit determination is not sound.

The basic legal proposition is founded upon the premise that generally the value of the taken premises is determined by the value of the whole property in the "before"

situation, that is the undesirable portions are valued with the desirable portions to arrive at an overall value. *See Deer Valley Industrial Park, supra.*

■ However, this "artificial averaging unit value" must, in a particular case give way to the realities of the use to which the property may be utilized. Thus, as pointed out in *Defnet Land & Investment Co. v. State ex rel. Herman*, 103 Ariz. 388, 442 P.2d 835 (1968) it is error to value the land taken on the basis of an artificial average unit value unless the reality of the case requires such a valuation. As was stated in *Tucson Title Insurance Co. v. State ex rel. Herman*, 15 Ariz.App. 452, 454, 489 P.2d 299, 301 (1971):

It may be that the part taken is the most valuable part of the land and to reduce its value by averaging it with less desirable land would result in awarding the landowner less than just compensation.

The converse is also true: That if the land taken is less valuable than the remainder, averaging its value with the more desirable property would result in the landowner obtaining a windfall and more than just compensation.

■ In this case the realities are that the land taken lies in the flood plain of Indian Bend Wash; the uses to which it can be put were limited; that because of these limitations, it was less desirable from a market value standpoint than the remainder of the property which did not suffer from such limitations on use. Under these circumstances, the trial court did not err in refusing to instruct the jury on an "averaging" theory or in refusing to strike the testimony of an expert who recognized this market reality.

For the foregoing reasons, the judgment of the trial court is affirmed.

WREN, J., and B. MICHAEL DANN, Superior Court Judge, concur.

NOTE: The Honorable B. MICHAEL DANN, Maricopa County Superior Court Judge, was authorized to participate by the

Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 3.